973 P.2d 339 (1999)
1999 OK CR 1
C.R.B., Appellant,
v.
The STATE of Oklahoma, Appellee.
No. J 98-0701.
Court of Criminal Appeals of Oklahoma.
January 5, 1999.

ACCELERATED DOCKET ORDER
PER CURIAM.
¶ 1 Appellant, born May 5, 1981, was charged as an adult on January 2, 1998, in the District Court of Custer County, Case No. CF-98-1, with Murder in the First Degree. On March 6, 1998, Appellant filed a Motion for Certification as a Youthful Offender or Juvenile. Following a hearing April 23, 1998, Appellant's motion for certification as a youthful offender was denied by the Honorable Jacqueline P. Duncan. Appellant appeals from the denial of her application for certification as a child.
¶ 2 On appeal Appellant raised two propositions of error:
1. The trial court erred in denying the juvenile's motion to certify her as a child where the evidence indicated that the juvenile met the overall criteria for being placed in the juvenile system.
2. The Magistrate abused her discretion in refusing to follow Dr. Richard Kahoe's report that found Appellant did not possess the sophistication and maturity to appropriately understand the consequences of her actions.
¶ 3 Pursuant to Rule 11.2(A)(4), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1997), this appeal was automatically assigned to the Accelerated Docket of this Court. The propositions were presented to this Court in oral argument September 10, 1998, pursuant to Rule 11.2(F). At the conclusion of oral argument, the matter was taken under advisement.
¶ 4 A brief summary of the facts of this case reveals that Appellant, at the age of *340 seventeen years, eight months, was charged as an adult January 2, 1998, with Murder in the First Degree. Witnesses testified that Appellant was at a New Year's Eve party. Liquor was being served to minors, including Appellant. Sometime after midnight, Appellant got into a fist fight with another young woman, Christine McBrayer. The witness testimony further reflects that Appellant went to her home and got a butcher knife from the kitchen. When Appellant saw McBrayer on the street about fifteen to twenty minutes later, she jumped from a car, ran up to McBrayer and stabbed her. The victim died.
¶ 5 The Youthful Offender Act [Act] was implemented beginning January 1, 1998. See 10 O.S.Supp.1997, § 7306-2.1. Therefore, as this crime was committed in the early morning hours of January 1, 1998, this Court has its first occasion to visit and review this Act.
¶ 6 The purpose of the Act is clearly set out in Section 7306-2 .2(B) wherein it states:
It is the purpose of the Youthful Offender Act to better ensure the public safety by holding youths accountable for the commission of serious crimes, while affording courts methods of rehabilitation for those youths the courts determine, at their discretion, may be amenable to such methods. It is the further purpose of the Youthful Offender Act to allow those youthful offenders whom the courts find to be amenable to rehabilitation by the methods prescribed in the Youthful Offender Act to be placed in the custody or under the supervision of the Office of Juvenile Affairs for the purpose of accessing the rehabilitative programs provided by that Office and thereby, upon good conduct and successful completion of such programs, avoid conviction for a crime.
However, the Act directs that "[a]ny person thirteen (13), fourteen (14), fifteen (15), sixteen (16) or seventeen (17) years of age who is charged with murder in the first degree shall be held accountable for his acts as if he were an adult; provided, the person may be certified as a youthful offender or a juvenile. . ." 10 O.S.Supp.1997, § 7306-2.5(A).
¶ 7 Prior to enactment of the Youthful Offender Act, any person age 13, 14, 15, 16 or 17, charged with murder in the first degree was considered as an adult and the only option available to the youth was certification as a juvenile. Because of the seriousness of this charge and the short period of time available for treatment should this youth be certified as a juvenile and because of the lack of resources for this type of serious offender, this option was not viable in most cases.
¶ 8 However, the Legislature has now created a third option and that is treatment as a "youthful offender". Under this scheme it is clear that the Legislature seeks to ensure the safety of the community, but at the same time provide viable methods of rehabilitation for those youths the courts deem may be amenable to such methods. See 7306-2.2(B).
¶ 9 Treated and sentenced as a "youthful offender", the court may impose sentence in the manner provided by law for an adult for punishment of the offense committed, subject to the power and authority of the court to suspend or delay sentence, defer judgment, or otherwise structure, limit, or modify the sentence. However, in no event shall the sentence exceed the amount of time of a possible sentence for an adult convicted of the same offense or ten years, whichever is less. 10 O.S.Supp.1997, § 7306-2.9(B).
¶ 10 The youthful offender may be placed under the supervision or in the custody of the Office of Juvenile Affairs through its Department of Juvenile Justice. The court may also issue orders with regard to the youthful offender as provided by law for the disposition of a child adjudicated delinquent. Id.
¶ 11 Whenever a youthful offender is placed in the custody of or under the supervision of the Office of Juvenile Affairs, a written rehabilitation plan for the youthful offender must be prepared and filed with the court within thirty days. This plan includes clearly stated, measurable objectives which the youthful offender is expected to achieve and the services that will be provided to the youthful offender by the Department of Juvenile Justice to assist the youthful offender to achieve the objectives. 10 O.S.Supp.1997, § 7306-2.10(A).
*341 ¶ 12 The court is required to conduct a semiannual review based upon written reports of the youth's conduct, progress and condition. Following any review hearing in open court and after consideration of all reports and other evidence properly submitted to the court, the District Court has the following options:
1. Order the youthful offender discharged without a court judgment of guilt and order the verdict or plea of guilty or plea of nolo contendere expunged from the record and dismiss the charge with prejudice to any further action if the court finds that the youthful offender has reasonably completed the rehabilitation plan and objectives and that such dismissal will not jeopardize public safety;
2. Revoke an order of probation and place the youthful offender in the custody of the Office of Juvenile Affairs;
3. Revoke a community supervision placement by the Department of Juvenile Justice;
4. Place the youthful offender in a sanction program if the youthful offender fails to comply with a written plan of rehabilitation or fails substantially to achieve reasonable treatment objectives while in community or other nonsecure programs; or
5. Enter a judgment of guilt and proceed as provided in Section 991a of Title 22, including transfer of the youthful offender to the custody or supervision of the Department of Corrections for the remainder of the youthful offender sentence, if the court finds by clear and convincing evidence that the youthful offender has:
a. after conviction as a youthful offender, seriously injured or endangered the life or health of another person by his/her violent behavior,
b. escaped from a training school;
c. committed a felony crime while in the custody or under the supervision of the Department of Juvenile Justice; or,
d. failed substantially to comply with a written plan of rehabilitation or failed substantially to achieve reasonable treatment objectives and is within thirty days of his/her eighteenth birthday, or nineteenth birthday if custody has been extended, and is still placed in an institution or other long-term staff secure facility.
10 O.S.Supp.1997, § 7306-2.10(F).
¶ 13 In the case before this Court the Appellant was seventeen years of age when she was charged with Murder in the First Degree. Therefore, we must look to Section 7306-2.5 of the Act. Section 7306-2.5 directs that "[a]ny person thirteen (13), fourteen (14), fifteen (15), sixteen (16) or seventeen (17) years of age who is charged with murder in the first degree shall be held accountable for his[/her] acts as if he[/she] were an adult; provided the person may be certified as a youthful offender or a juvenile ...".
¶ 14 Section 7306-2.5(C)(1) requires the accused person to file a motion for certification as a youthful offender or a juvenile before the start of the criminal preliminary hearing. The accused person may then offer evidence to support the motion for certification as a youthful offender or a juvenile at the conclusion of the State's case at the criminal preliminary hearing. Section 7306-2.5(C)(2). In the present case Appellant called no witnesses but relied solely upon the psychological evaluation prepared by Dr. Richard Kahoe.
¶ 15 Section 7306-2.5(D) directs the trial judge to rule upon the certification motion of the accused person before ruling on whether to bind the accused over for trial and the trial judge is directed to give consideration to the following guidelines:
1. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
2. Whether the offense was against persons, and, if personal injury resulted, the degree of personal injury;
3. The record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions;

*342 4. The sophistication and maturity of the accused person and his capability of distinguishing right from wrong as determined by consideration of his psychological evaluation, home, environment situation, emotional attitude and pattern of living;
5. The prospects for adequate protection of the public if the accused person is processed through the youthful offender system or the juvenile system;
6. The likelihood of reasonable rehabilitation of the accused person if he is found to have committed the alleged offense, by the use of procedures and facilities currently available to the juvenile court; and
7. Whether the offense occurred while the accused person was escaping or on escape status from an institution for youthful offenders or delinquent children.
¶ 16 The Legislature determined that the trial court, in its decision on the certification motion of the accused person, "need not detail responses to each of the above considerations, but shall state that the court has considered each of the guidelines in reaching its decision". Section 7306-2.5(D).
¶ 17 However, when there is not a sufficient record and there are not detailed findings of fact and conclusions of law, it is difficult for this Court to properly review the matter on appeal. We do not believe it is the Legislature's intent for this Court to review the trial court's decision for an abuse of discretion based merely upon the trial judge stating, "I have considered each of the guidelines in reaching my decision." Therefore, this Court will henceforth require, notwithstanding the statutory requirements, detailed findings of fact and conclusions of law as to each of the guidelines set out in Section 7306-2.5(D), in addition to the statement that the trial court has considered each of the guidelines in reaching its decision.
¶ 18 In the present case Judge Duncan stated that she reviewed the testimony of the witnesses and the parties' stipulations as to the testimony of the emergency medical technician and doctor, reviewed about twenty pages of notes that she took at the prior hearing, reread Dr. Kahoe's report and considered his testimony, reread the Youthful Offender Act and considered all of it, considered the purpose of the Act, considered each of the guidelines set forth in Section 7306-2.5(D), and considered those guidelines in light of the information and testimony given. Finding that the offense of murder in the first degree appeared to have been committed by Appellant and that there was sufficient cause to believe that Appellant is guilty, Judge Duncan denied Appellant's request for certification as a youthful offender.
¶ 19 Because of the enactment of the Youthful Offender Act and the Legislature's intent in establishing methods of rehabilitation for those youths who may be amenable, but at the same time ensure the public's safety, we now find that we do not have sufficient record in this case to properly review the trial court's decision. The trial judge did not make findings of fact as to each of the guidelines, but denied certification as a youthful offender. The only testimony offered in this matter recommends this youth be afforded the opportunity for rehabilitation as a youthful offender. A certification study was not ordered by the District Court or prepared by the Department of Juvenile Justice. To fully implement the purpose of this Act, the District Court needs sufficient information and this Court needs an adequate record for review. Therefore, we believe this type of report, the same type of study as referred to in Sections 7306-2.8(C) and 7306-2.9(A)(1), would be beneficial in any type of certification proceeding. In the present case, there is limited testimony about the Appellant's environment, family or education. The Appellant called no witnesses.
¶ 20 Therefore, we are remanding this matter to the District Court for a full adversarial hearing at which Appellant will have the burden of proof to establish by a preponderance of the evidence that she should be treated as a youthful offender. The State may put on evidence. The trial court shall consider the evidence and issue an order with detailed findings of fact as to each of the guidelines and conclusions of law. This Court will then review the record for an abuse of discretion.
*343 ¶ 21 The order of the District Court with findings of fact and conclusions of law shall be filed in this Court on or before sixty (60) days from the date of this Order.
IT IS SO ORDERED.
Charles S. Chapel
CHARLES S. CHAPEL, Presiding Judge
Reta M. Strubhar
RETA M. STRUBHAR, Vice Presiding
Judge
Charles A. Johnson
CHARLES A. JOHNSON, Judge
LUMPKIN, Judge, dissents
LANE, Judge, dissents
LUMPKIN, J., dissents.
¶ 1 I must respectfully dissent to the opinion in this case. Not only does the Court disregard its own jurisprudence, it also disregards the role of the judicial branch of government envisioned by the framers of our national constitution.
¶ 2 The Appellant raised two propositions of error in her appeal. First, she claims the trial court erred in denying Appellant's motion to be certified as a child where the evidence indicated she met the overall criteria for being placed in the juvenile system. Second, Appellant claims the magistrate abused her discretion by refusing to follow Dr. Richard Kahoe's report that found Appellant did not possess the sophistication or maturity to appropriately understand the consequences of her actions.
¶ 3 Each of these issues can and should be adjudicated on the record presented as part of this appeal. The Appellant had the opportunity to present evidence in the district court on her Motion for Certification as a Youthful Offender or Juvenile. The trial judge reviewed that evidence and rendered a decision. I find nothing in the law to show the trial judge abused her discretion with respect to either of these issues.
¶ 4 The Oklahoma Legislature has provided a list of guidelines for trial courts to consider in resolving a certification motion under the Youthful Offender Act. 10 O.S.Supp.1997, § 7306-2.5(D). Under this section, a judge need not detail responses to each of the guidelines but shall state that each of the guidelines was considered in reaching the decision. The majority is apparently offended by this provision. However, it is nothing new. An identical provision has been around since 1978 in our reverse certification statute. 10 O.S.Supp.1991, § 7306-1.1(E). Indeed, this Court has considered this language in the past without finding any problems. See W.D.C. v. State, 799 P.2d 142, 144 (Okl.Cr.1990) ("The Court must state that it has considered each of the guidelines in reaching the decision, but it need not detail responses to each of the four factors."); G.E.D. v. State, 751 P.2d 755, 757 (Okl.Cr.1988) ("We again find no abuse of discretion. The statute clearly states that a trial court need not detail responses to each of the considerations as long as they are noted in the determination."); S.R.S. v. State, 728 P.2d 515, 518 (Okl.Cr.1986) ("the statute in question is constitutional and meets the requirements of due process.").
¶ 5 Although the Youthful Offender Act provides no specific standard of review for use on appeal, the standard was abuse of discretion under the previous reverse certification law. W.C.P v. State, 791 P.2d 97, 100 (Okl.Cr.1990). An "abuse of discretion" is a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application. Id.
¶ 6 Applying that standard to the record created in the district court, the trial judge did not abuse her discretion. The preliminary hearing testimony of the witnesses and the stipulation of Appellant's sister show the offense was committed in an aggressive, violent, and premeditated manner. Appellant deliberately and purposefully procured the knife, located the victim, and stabbed her. Despite efforts to stop her, Appellant tried to stab the victim a second and third time. The only other evidence is the testimony of the psychologist who spent two hours and six minutes with Appellant and determined "justice cannot be served" by trying her as an adult. Yet this same psychologist also testified he could not guarantee two years at the Rader facility would be enough for Appellant.
*344 ¶ 7 Just because an expert witness gives an opinion does not mean the trial judge abused her discretion by refusing to follow it. Under Section 7306-2.5(D), that recommendation is only one factor to consider, and the statute does not place any greater weight on it than the other criteria which must be considered. The record shows the judge considered the report. This was all she was statutorily required to do. Her decision not to follow the psychologist's recommendation is not clearly erroneous, as the psychologist testified Appellant knew right from wrong and knew what she was doing was wrong.
¶ 8 The Court once again disregards its role within our system of checks and balances established through the creation of an executive, legislative, and judicial branch of government. Rather than adjudicating issues properly before us, the majority renders an advisory opinion on its views of the Youthful Offender Act. However, the Court of Criminal Appeals does not issue advisory opinions. See e.g., Steffey v. State, 916 P.2d 263 (Okl.Cr.1996); Canady v. Reynolds, 880 P.2d 391, 394 (Okl.Cr.1994); Matter of L.N., 617 P.2d 239, 240 (Okl.Cr.1980). It is "the province and duty of the judicial department to say what the law is," Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803)  not what the law should be.
¶ 9 In executing our constitutional role, the judiciary should adjudicate only those issues which are presented to it. This allows for a reasoned analysis of the statutory language when compared to facts which bring particular provisions of the Act into question. Just because the majority is overwhelmed by the new Youthful Offender Act, does not mean it has to pass judgment on the entirety of the Act in one fell swoop.
¶ 10 I am extremely concerned when the Court begins rewriting lawfully enacted legislation. I am even more concerned when such a practice occurs without any finding that the legislation is unconstitutional, as drafted. While it is clear the majority would have drafted the Youthful Offender Act differently, this is not a valid basis to disregard the plain legislative intent in the act. As Alexander Hamilton stated in Federalist No. 78, "it can be of no weight to say, that the Courts on the pretense of a repugnancy, may substitute their own pleasure to the constitutional intentions of the Legislature."
¶ 11 The role of the judiciary and the ability of its members to stay within that role has been a matter of discussion since the creation of our great republic. Many years ago, some were concerned that the authority of the proposed Supreme Court of the United States would be superior to that of the Legislature and the power of construing the laws according to the spirit of the Constitution would allow the court to mold those laws into whatever shape it deemed proper. Alexander Hamilton responded to this charge in Federalist No. 81:
there is not a syllable in the plan under consideration, which directly empowers the national courts to construe the laws according to the spirit of the Constitution, or which gives them any greater latitude in this respect, than may be claimed by the courts of every state. I admit, however, that the Constitution ought to be the standard of construction for the laws, and that wherever there is an evident opposition, the laws ought to give place to the Constitution.... There never can be danger that the judges, by a series of deliberate usurpations on the authority of the Legislature, would hazard the united resentment of the body entrusted with it, while this body is possessed of the means of punishing the presumption by degrading them from their stations.
¶ 12 In the present case, the majority's dicta, in the form of an advisory opinion, disregards the judicial role of adjudicating propositions raised on the record presented. The Court is not called upon to reconcile conflicting statutes. Neither is it required to determine the constitutionality of this Act. It is merely required to apply a lawful statutory enactment to the facts of this case as raised by the allegations of error on appeal. That is the role of this Court and the discipline this Court should exercise in fulfilling its role under our system of government. Rather than adjudicating the issues raised on the record or merely remanding the case for the trial judge to enter findings of fact and conclusions of law to support her decision, the *345 majority has chosen to send the case back for a "full adversarial hearing at which Appellant will have the burden of proof to establish by a preponderance of the evidence that she should be treated as a youthful offender". The Appellant has already had that opportunity. She has exercised her rights and decided what evidence she would present. The majority should exercise discipline and restrain itself from the human frailty of attempting to refashion this case into the case they wish it could be. Or, as previously noted approximately 210 years ago, "[i]t can be of no weight to say, that the Courts on the pretense of a repugnancy, may substitute their own pleasure to the constitutional intentions of the Legislature".
LANE, J., dissents.
¶ 1 The Appellant has raised two propositions of error:
1. The trial court erred in denying the juvenile's motion to certify her as a child where the evidence indicated that the juvenile met the overall criteria for being placed in the juvenile system.
2. The Magistrate abused her discretion in refusing to follow Dr. Richard Kahoe's report that found Appellant did not possess the sophistication and maturity to appropriately understand the consequences of her actions.
These are the only issues that I would address, and I consider any discussion of other issues such as a general analysis of the new youthful offender act to be purely dicta and precedent for nothing. I must also object to remanding this case for a new evidentiary hearing. I would decide these issues on the record before us.
¶ 2 Since the majority has deemed it their duty to go beyond the parameters of these two issues, I feel compelled to comment on their repealing legislative language contained in Section 7306-2.5(D) wherein it is stated that the trial judge does not have to detail responses to the mandated considerations but shall state that he or she has considered each of the guidelines. I believe that it is within the legislative authority to enact such a provision. Therefore, I would not find that the expression should be honored.
¶ 3 However, the legislature has not told us how to review cases prosecuted under the act and what standard of review that we must use. If the judge below follows the statute and only states that he considered the guidelines we will be bound to give the case a de novo review because we will not be informed as to the basis for the decision. On the other hand, if the judge places findings and conclusions in the record we will have the necessary information to review for an abuse of discretion.[1]
¶ 4 I dissent to remanding for further proceedings.
NOTES
[1] I think it appropriate to inform the trial bench that many times when we are applying the abuse of discretion standard judges of this court express the opinion that they would not have done the same thing that the trial judge did, but they can find a basis for the decision in the record and affirm. When we use a de novo review, we decide the case as if the trial judge had not made a decision.