v.

**STATE of Oklahoma, Appellee.**

**No. J–99–640.**

Court of Criminal Appeals of Oklahoma.

Dec. 30, 1999.

---

## ACCELERATED DOCKET ORDER

¶ 1 Appellant is charged as an adult with First Degree Murder in the District Court of Tulsa County, Case No. CF–99–488. Appellant was 17 years old at the time the offense was committed.[1]  Appellant's motion to be certified to stand trial as a juvenile or youthful offender was overruled by the District Court in an order entered April 29, 1999. From this Judgment, Appellant appeals.

¶ 2 On appeal Appellant raised two propositions of error:

1. Appellant rebutted the presumption of adulthood; the State of Oklahoma failed to adduce testimony or evidence to the contrary;

2. Judge Smith misinterpreted the purpose of the Youthful Offender Act; abused her discretion by presupposing that Appellant would not be "bridged over" into the Department of Corrections; and usurped the authority of the District Judge by finding Appellant amenable to treatment but refusing to certify Appellant as a Youthful Offender.

¶ 3 This appeal was automatically assigned to the Accelerated Docket of this Court. The propositions or issues were presented to this Court in oral argument July 29, 1999, pursuant to Rule 11.2(F), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (1999). At the conclusion of oral argument, the matter was taken under advisement by this Court.

¶ 4 Appellant, citing this Court's decision in *C.L.F. v. State,* 1999 OK CR 12, 989 P.2d 945, 70 OBJ 946,[2] alleges that the State failed to meet its requirement to show that she should not be certified as a Youthful Offend-er, claiming she successfully rebutted the presumption of adulthood. Absent evidence to the contrary, Appellant argues, it was an abuse of discretion for Judge Smith to deny her motion for certification as a Youthful Offender. Appellant also claims that Judge Smith misinterpreted the Youthful Offender Act (hereinafter "Act") and abused her discretion by finding Appellant amenable to treatment but denying Youthful Offender status because she was unable to find that Appellant would have sufficient time to complete the recommended treatment program and could not be assured that Appellant would be "bridged over" to the adult system.

¶ 5 Appellant is charged with murder in the death of her 18 month old daughter. Judge Smith, in denying Appellant's application, was careful to note the distinctions between Appellant's case, and the facts in *C.L.F.* The evidence presented at Appellant's hearing showed, unlike *C.L.F.,* that Appellant was the perpetrator of the offense charged, and was "an active participant ... in the death of her minor child."

¶ 6 The District Court determined, considering the relevant criteria specified at 10 O.S.Supp.1997, § 7306–2.5(D)(1)–(7), that Appellant's request for certification as a Youthful Offender should be denied. Judge Smith found that testimony about Appellant's commission of first degree murder indicated there was premeditation or, at least, willful acts, on Appellant's part; that the offense was against a person, the degree of injury being the death of an 18–month–old child; that Appellant had only one prior contact with the juvenile system and that probation for that incident was successfully completed; that Appellant was immature, suffered from chronic depression, and lacked self-confidence and sophistication, but is of above-average intelligence and can clearly distinguish right from wrong. The court expressed some concern about adequate protection of the public in general and Appellant's remaining child specifically.

---

1. Appellant's date of birth is May 24, 1981. She turned 18 less than one month after the hearing on her motion to certify as a Youthful Offender.

2. Judge Smith was the Special Judge presiding over the appellant's motion for certification as a juvenile or youthful offender in *C.L.F. v. State.*

¶ 7 Judge Smith also noted Dr. Jones's testimony indicated the public could be adequately protected if Appellant remained under supervision of the Office of Juvenile Affairs (hereinafter O.J.A.) and the State's witness indicated, based upon her limited knowledge, that "there was a real problem with the protection of the public" with regard to Appellant. While Judge Smith recognized Dr. Jones' high hopes for Appellant's rehabilitation, and while she felt there was "a likelihood of reasonable rehabilitation . . . based upon [her] understanding of the facilities . . . and procedures . . . currently available," she found there was insufficient time for Appellant to complete the recommended programs within the specified five year time period required for successful treatment, and denied Appellant's request for certification as a youthful offender.

¶ 8 Judge Smith, in reaching her conclusion and explaining her decision to deny Appellant's request, made the following observation:

> I understand [defense counsel's] arguments that the treatment which O.J.A. can provide for [Appellant] is not limited to 19 years or to 21 years of age, and I certainly understand the State's position that it is, in fact, limited unless consistent with Title 10, § 7306–2.10, the court were to find that she should be bridged over into the adult system. And it is my understanding that the court would have to find that she had failed to substantially comply with a written plan of rehabilitation or failed substantially to achieve reasonable treatment objectives within 30 days of her eighteenth birthday or nineteenth birthday if custody had been extended.

Upon being questioned by defense counsel, Judge Smith further clarified her ruling, stating:

> [L]et me explain my decision in that regard. It's not that I am presupposing that your client would fail the treatment program or would not fail the treatment pro-

gram. What I understand is that she is not amenable to rehabilitation within the time period which Dr. Jones feels that she needs based upon what is currently available in our system.

¶ 9 This case is representative of a pattern of cases[3] which has developed throughout the state involving the Act. The pattern is virtually identical in every case as follows: (i) a violent crime against a person is committed by an offender under age 18; (ii) judicial proceedings are commenced to determine whether the offender will be tried and/or sentenced as a youthful offender or adult; (iii) expert testimony is received concluding that the offender is amenable to treatment and rehabilitation over a period of several years; (iv) O.J.A. representatives testify that O.J.A. can only retain custody of the offender to age 19; and (v) the trial court denies treatment or sentencing as a youthful offender because the required treatment can not be completed before the offender reaches age 19, and the public cannot be adequately protected if the offender is released before the treatment plan is completed.

■ ¶ 10 The Act specifies O.J.A.'s placement options when a youthful offender is committed to its custody.[4] Nowhere in the Act is it provided that O.J.A. may not retain custody of or provide programs for offenders past age 19. Indeed, no reasonable person can read the Act and conclude the youthful offenders can or should be released by O.J.A. or the Department of Corrections (D.O.C.) at any age before successfully completing a judicially ordered sentence and approved treatment plan. There is no reason why, in this case or any of the other similar cases, upon conviction under the Act, a trial court cannot enter an order sentencing a youthful offender to the custody of O.J.A. or D.O.C. for a term of years beyond age 19 while the youthful offender undergoes treatment pursuant to a written, court-approved plan.[5] If the offender fails to comply with the plan, or fails to achieve rehabilitation, for any reason, the

---

3. *See, e.g., C.R.B. v. State,* 1999 OK CR 1, 973 P.2d 339; *C.E.S. v. State,* J–99–1030; *Z.M.J. v. State,* J–98–1134.

4. 10 O.S.Supp.1997, § 7306–2.11.

5. 10 O.S.Supp.1997, § 7306–2.9(B) specifically provides that upon conviction the court may sentence a youthful offender up to a maximum of ten (10) years in the custody of O.J.A.

trial court can then take such other action as may be allowed by the Act.[6] We do not agree with the State's contention that O.J.A. is unable to retain individuals within its system past the age of 19.

¶ 11 We specifically do not find, in deciding this matter, that Appellant is entitled to be treated as a youthful offender. That decision is to be made at the District Court level. However, we remand this case to the District Court to reconsider Appellant's request for certification as a youthful offender, reviewing the evidence presented at the certification hearing without regard to O.J.A.'s policy that it will not retain youthful offenders past the age of 19. Specifically, we find it is insufficient for the District Court to deny Appellant's request for certification as a youthful offender based solely upon the amount of time remaining until the Appellant reaches her 19th birthday and O.J.A.'s contention that it is unable to retain custody of any individual past age 19.

¶ 12 This Court does not wish to legislate and establish new law as it relates to Youthful Offenders. Hopefully the Legislature will refine this legislation to fulfill the purposes of the Act as specified in 10 O.S.Supp.1997, § 7306–2.2(B). However, requiring the State to follow the law is not legislating. The Act was passed by the legislature and signed into law by the Governor. Certainly there will be cases where a defendant, based on the evidence and statutory factors to be considered by the court, should be denied youthful offender status. Those offenders should rightfully be tried and sentenced, from the very beginning, as adults. But if the evidence warrants youthful offender status, the District Court should order O.J.A. to maintain custody of the defendant and provide such treatment as might be appropriate, pursuant to a written plan, with interim reviews as provided for in the Act and as scheduled by the District Court, at its discretion.

¶ 13 **IT IS THEREFORE THE ORDER OF THIS COURT,** by a three (3) to two (2) vote, that this matter is remanded to the District Court of Tulsa County to reconsider Appellant's request for certification as a youthful offender. The District Court is directed to consider the evidence presented at the certification hearing without regard to O.J.A.'s policy that it will not retain youthful offenders past the age of 19. Appellant and/or the State can then elect whether to appeal the decision of the District Court to this Court.

¶ 14 **IT IS SO ORDERED.**

¶ 15 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 30th day of December, 1999.

/s/ Reta M. Strubhar

RETA M. STRUBHAR, Presiding Judge

/s/ Gary L. Lumpkin, DISSENTS

GARY L. LUMPKIN, Vice Presiding Judge

/s/ Charles A. Johnson

CHARLES A. JOHNSON, Judge

/s/ Charles S. Chapel

CHARLES S. CHAPEL, Judge

/s/ Steve Lile, DISSENTS

STEVE LILE, Judge

LILE, J.: Dissents.

¶ 1 The Oklahoma Legislature stated its goal in enacting the Youthful Offender Act as follows:

"B. It is the purpose of the Youthful Offender Act to better *ensure the public safety by holding youths accountable for the commission of serious crimes, while affording courts methods of rehabilitation for those youths the courts determine, at their discretion, may be amenable to such methods.* It is the further purpose of the Youthful Offender Act to allow those youthful offenders whom the courts find to be amenable to rehabilitation by the methods prescribed in the Youthful Offender Act to be placed in the custody or under the supervision of the Office of Juvenile Affairs for the purpose of accessing the rehabilitative programs *provided by that Office* and thereby, upon good conduct and successful completion of such programs avoid conviction for a crime." 10 O.S.Supp. 1997, § 7306–2.2(B.). (Emphasis added).

¶ 2 Further, we review Judge Smith's decision to treat V.J.A. as an adult for abuse of

---

**6.** *See* 10 O.S.Supp.1997, § 7306–2.10.

discretion, which has been defined as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application . . .". *C.L.F. v. State,* 1999 OK CR 12, 989 P.2d 945.

¶ 3 V.J.A. was 17 years and 8 months old when she smothered her eldest daughter Elexxus, age 1½ years. She at first blamed an aunt for the injuries, but ultimately admitted that she first gave the child an overdose of her infant's medication, and then held a comforter over Elexxus' face for about 5 minutes. Appellant told officers that she did it because she had worked herself up into a rage, she was mad at the child, and she wanted to go see her own mother who worked at the hospital emergency room. After smothering the child, she took a shower and then went to a neighbor's apartment to call 911. Elexxus died of suffocation.

¶ 4 The trial court considers seven criteria in determining whether V.J.A. should be certified as a youthful offender. The statute does not tell the court what weight should be given to any of the criteria but does instruct the court to consider each. The State presented evidence that the offense was committed in an aggressive, violent, premeditated or willful manner through V.J.A.'s own description of the event. Appellant offered no evidence on this issue, although Appellant's attorney did ask his own witness, Dr. Herman Jones, to compare Appellant's murder charge to other juveniles charged with murder, and he responded that this was like asking if the Black Death was better than Bubonic Plague or Cholera.

¶ 5 Likewise, the second criteria—whether the offense was against persons, and, if personal injury resulted, the degree of personal injury was established by the death of Elexxus.

¶ 6 The third criteria—record and past history of the accused was established by the evidence. Appellant had one previous contact concerning a property crime about 3 years earlier. She received counseling. She suffered from chronic depression. Appellant was taking antidepressant medication at the time of the murder. She was molested at age 4. She had attempted suicide twice. Dr.

Jones testified that when others intervene with Appellant it triggers a defiant response because it isn't the way she wants to do things.

¶ 7 The fourth criteria directs the court to look at the sophistication and maturity of the accused and her ability to distinguish right from wrong. Appellant's psychologist testified that Appellant was bright, stubborn and head strong. Appellant has above-average intelligence. Appellant understood the difference between right and wrong.

¶ 8 The fifth criteria requires the court to consider the prospects for adequate protection of the public. Dr. Jones testified that Appellant is a risk to involve herself in "negative behavior" and that she is unlikely to harm the public in general, but that her risk is focused on herself and those in her immediate care.

¶ 9 The sixth criteria, and the last relevant criteria, instructs the court to consider the "likelihood of reasonable rehabilitation . . . by the use of procedures and facilities currently available . . .". Here, Appellant's witness, a 20 year veteran of Oklahoma's juvenile justice system, testified that he did not believe O.J.A. had adequate time to address Appellant's problems. He further testified that:

> "[B]ecause of the chronicity of the depression, because of her tendency to remain emotionally detached and reduced amenability, it could easily encompass a five (5) year interval to be able to address those issues."

¶ 10 When specifically asked about the probability of success, the witness stated Appellant had a "reduced amenability to rehabilitation."

¶ 11 The court specifically found that there was a reasonable likelihood of rehabilitation but not within the framework currently available in our system today. This decision by the district court is supported both by the law and facts in this case. Therefore, it is untenable to suggest the decision is an abuse of discretion, i.e. clearly erroneous.

¶ 12 With this decision, a majority of this court continues its efforts to judicially legis-

late amendments of the Youthful Offender Act. In *C.R.B. v. State*, 1999 OK CR 1, 973 P.2d 339, this Court ignored the clear legislative mandate that the trial court "need not detail responses to each of the above considerations." This court required detailed findings of fact and conclusions of law without regard to the requirements of the statute. For a detailed discussion, see Judge Lumpkin's dissent in *C.R.B.*

¶ 13 Today, the same majority further amends the statute by ignoring its clear dictate that the trial judge consider the "likelihood of reasonable rehabilitation ... by the use of procedures and facilities currently available ..." The majority instructs the trial court to reconsider its ruling, and the court is instructed to ignore the fact that no programs exist for youthful offenders past the age of 19. Such a predicate for a decision is clearly erroneous. If a judge of the district court in any other case disregarded evidence in rendering their decision, this court would rightfully reverse the case for failure of the judge to follow the law. The Appellant in this case will be 19 in May of 2000. I understand and share the frustration born of O.J.A.'s refusal to provide treatment programs for youthful offenders past the age of 19. However, I believe all would agree that this is not even a close case for youthful offender status.

¶ 14 The evidence in support of denying the motion for prosecution as a youthful offender was overwhelming. I would affirm the trial court without regard to the continuing political and legal battle over whether treatment is available beyond age 19 years for youthful offenders.

¶ 15 I am authorized to state that Judge LUMPKIN joins in this Dissent.