STATE v. B.C.E.T.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE v. B.C.E.T.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE v. B.C.E.T.
2018 OK CR 17
Case Number: JS-2017-1315
Decided: 05/24/2018
STATE OF OKLAHOMA, Appellant v. B.C.E.T., Appellee.
Cite as: 2018 OK CR 17, __ __

 


 

ACCELERATED DOCKET OPINION


KUEHN, JUDGE:
¶1 On August 16, 2017, in the District Court of Washita County, Case No. CF-2017-68, the State charged Appellee, B.C.E.T., by Information as an adult with Felony Murder in the First Degree in violation of 21 O.S.Supp.2012, § 701.7(B), Shooting with Intent to Kill in violation of 21 O.S.2011, § 652(A); and Burglary in the First Degree in violation of 21 O.S.2011, § 1431. On July 20, 2017, the date these offenses were alleged to have occurred, Appellee was fourteen (14) years and four (4) months old. On August 31, 2017, Appellee filed an "Amended Motion for Certification as a Child" under the authority of 10A O.S.2011, § 2-5-205. Appellee's Motion asked that the District Court certify him as a child, or alternatively, as a youthful offender.
¶2 The Honorable Jill C. Weedon, Associate District Judge presided over Appellee's preliminary hearing and the hearing on Appellee's request for reverse certification. At the conclusion of those proceedings, the Magistrate took the matter under advisement and on December 19, 2017, filed a detailed written order denying certification as a juvenile but granting certification as a youthful offender. The order further bound Appellee over for trial on all counts. Appellant, the State of Oklahoma, now appeals that order.
¶3 The State's appeal was regularly assigned to this Court's Accelerated Docket under Section XI of the Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2018), and oral argument was held on March 29, 2018. Appellant raises a single proposition of error:
The District Court erred in sustaining the Motion to Certify as a Child because the Appellee failed to produce sufficient evidence to establish he is entitled to youthful offender status and sentencing.
After hearing oral argument and after a thorough consideration of Appellant's proposition of error and the entire record before us on appeal, the court affirms the trial court's order certifying Appellee as a youthful offender, as we FIND no abuse of discretion.
¶4 The evidence appropriately weighed by Judge Weedon included testimony from three psychological experts who personally examined Appellee. Each affirmed that Appellee was amenable to treatment and that his prospects for rehabilitation were good. These mental health professionals found Appellee had only a moderate risk of reoffending. Disturbingly, however, there was also testimony that this moderate risk assessment was derived without consideration of those acts Appellee was accused of committing in the charged offenses. We note that in the reverse certification context, a juvenile is presumed to have committed the offenses for which probable cause has been established. The Office of Juvenile Affairs (OJA) officials, treatment providers, or mental health professionals, when performing their evaluations, should not ignore the juvenile's prior behaviors as revealed by competent evidence at the preliminary hearing or as revealed in any other source materials on which competent professionals would reasonably rely in rendering an expert opinion.
¶5 Despite any apparent shortcoming in this one particular aspect of the expert testimony, we recognize Judge Weedon gave thorough consideration to Appellee's behaviors regarding the alleged offenses. In doing so, she heavily weighed those behaviors and fairly weighed the expert opinion testimony, all as required by the reverse-certification guidelines set out within 10A O.S.2011, § 2-5-205(E).
¶6 Certification motions are difficult. They call on courts to make predictions about future behaviors and require trial courts to hear from experts in order to have sufficient information. See J.R.L. v. State, 2000 OK CR 26, ¶¶ 8-9, 17 P.3d 1041, 1043 (recognizing that the statutory criteria for reverse-certification as a youthful offender "requires consideration of a 'psychological evaluation''' and therefore "it is evident from the language of the statute, that the trial court must have a psychological evaluation," as well as a certification study); cf. In Interest of M.D.N., 493 N.W.2d 680, 687 (N.D. 1992) ("Determining whether a juvenile is amenable to treatment, especially in light of a limited time period within the juvenile system, requires the juvenile court judge to predict the future. It is essential, therefore, that the court hears expert testimony--not as a sole basis for the court's decision, but to assist in its determination."). In turn, it is imperative that the experts provide the trial court more than a general listing of OJA facilities and programs. The trial court must also consider expert testimony about the youth's mental and medical issues and specifically how the Youthful Offender Program will address and treat those delineated issues.
¶7 In this case, although the State criticizes portions of the experts' testimony and their conclusions and opinions as to certification, most of those criticisms involve the weight and credibility to be given to that testimony. Also, the State did not present any experts opposing or challenging Appellee's experts. We have long held that "[t]he credibility of witnesses and the weight and value to be given to their testimony are within the exclusive province of the trier of facts." Brown v. State, 1972 OK CR 55, ¶ 6, 494 P.2d 344, 346, accord Bland v. State, 2000 OK CR 11, ¶ 29, 4 P.3d 702, 714.
"The reverse certification question is addressed to the sound discretion of the magistrate. Our duty on appellate review of the magistrate's decision, therefore, is not to conduct our own weighing de novo, but rather to determine whether the decision of the magistrate is supported by the law and facts of the case. A decision which is so supported is, by definition, not an abuse of discretion."
W.D.C. v. State, 1990 OK CR 71, ¶ 8, 799 P.2d 142, 144-45. See also Cargle v. State, 1995 OK CR 77, ¶ 25, 909 P.2d 806, 816 ("We see no abuse of discretion here, as we find the court's ruling is reasonably supported by competent evidence."). Judge Weedon clearly established in her comprehensive Findings of Fact that she weighed all of the testimony and exhibits in deciding to certify Appellee as a Youthful Offender.
¶8 Having reviewed the appellate record in this case, we find that the Judge's decision was not an abuse of discretion and was supported by the facts and law.
DECISION
¶9 The order of the District Court of Washita County granting Appellee's motion for certification as a youthful offender in Case No. CF-2017-68 is AFFIRMED. Pursuant to Rule 3.15 of this Court's Rules, MANDATE IS ORDERED ISSUED on the filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF WASHITA COUNTY BEFORE
THE HONORABLE JILL C. WEEDON, ASSOCIATE DISTRICT JUDGE
 
 
 
APPEARANCES AT TRIAL 
APPEARANCES ON APPEAL 
 
 
 
 
ANGELA MARSEE 
S. BROOKE GATLIN 
 
DISTRICT ATTORNEY 
ASSISTANT DISTRICT ATTORNEY 
 
S. BROOKE GATLIN 
111 EAST MAIN, BOX 3 
 
ASSISTANT DISTRICT ATTORNEY 
CORDELL, OKLAHOMA 73632 
 
111 EAST MAIN, BOX 3 
ATTORNEY FOR APPELLANT 
 
CORDELL, OKLAHOMA 73632 
 
  
 
ATTORNEYS FOR THE STATE 
 
 
 
 
 
REBECCA N. BEASON 
REBECCA N. BEASON 
 
MICHAEL T. BEASON 
MICHAEL T. BEASON 
 
BEASON LAW FIRM 
BEASON LAW FIRM 
 
108 WEST BROADWAY 
108 WEST BROADWAY 
 
P.O. BOX 685 
P.O. BOX 685 
 
ALTUS, OKLAHOMA 73522 
ALTUS, OKLAHOMA 73522 
 
ATTORNEYS FOR DEFENDANT 
ATTORNEYS FOR APPELLEE 


OPINION BY: KUEHN, J.
Lumpkin, P.J.: CONCUR
Lewis, V.P.J.: CONCUR IN RESULTS
Hudson, J.: DISSENT
Rowland, J.: CONCUR
 
 


LEWIS, VICE PRESIDING JUDGE, CONCURS IN RESULTS: 
¶1 I write separately to clarify perceived inconsistencies in the Opinion's finding that the O.J.A. experts did not consider B.C.E.T.'s charged offenses when making their recommendation. In fact, the O.J.A. psychological clinician testified that one testing tool did not take the charged offenses into account, but she considered everything in making her recommendation. Had the experts not considered the instant offenses in making their recommendation, then their recommendation would be faulty. I do not believe the recommendation is faulty, as I believe they considered everything including the instant offenses.
¶2 I find that the experts based their findings with due consideration to the instant offenses in making their recommendation, and the trial court properly considered the recommendations of those experts, as well as the instant offenses. I, therefore, join the Opinion in finding that the trial court did not abuse its discretion in making its decision.
 
 


HUDSON, J., DISSENTING:
¶1 This is a shocking crime. Appellee is accused of breaking into the home of a schoolmate, C.T., in the middle of the night while C.T.'s family was sleeping then fatally shooting C.T.'s mother in the head and shooting C.T. in both arms. After being shot, C.T. fell to the floor where he was promptly kicked in the head. C.T. squinted his eyes and pretended to pass out but was still able to see his attacker towering overhead while pointing the gun at C.T. for a brief time. The evidence shows these offenses were premeditated, carried out in a manner to avoid detection and were prompted by little more than Appellee's brooding dislike of C.T. The State's evidence too reveals Appellee's troubling history of violence directed towards C.T. and other classmates prior to the onslaught he unleashed inside C.T.'s home.
¶2 The State presented evidence showing that Appellee had numerous school suspensions for fighting in the 2016-2017 school year. One of those fights was witnessed by Paul Pankhurst, an assistant school principal. Pankhurst observed Appellee ambush K.G. in the school cafeteria and punch the boy in the face. On another occasion, Appellee slapped C.T. in the face after a school assembly. In a separate incident, Appellee was found in possession of a Taser at school. Appellee was eventually suspended for the rest of the school year after attacking another student. During this incident, Appellee waited outside the school cafeteria for the student then pushed past two others so he could hit the boy. When given the opportunity to lessen this last school suspension, Appellee's mother told Pankhurst "she did not believe that she could keep [Appellee] from fighting again. So it was . . . the rest of the year."
¶3 The Legislature must have envisioned a defendant like Appellee when it enacted the current statutory scheme for juvenile offenders charged with first degree murder. At age fourteen years and four months, Appellee was presumed to be an adult under Oklahoma law when the charged offenses were committed. See 10A O.S.2011, § 2-5-205(A) ("Any person thirteen (13) or fourteen (14) years of age who is charged with murder in the first degree shall be held accountable for the act as if the person were an adult; provided, the person may be certified as a youthful offender or a juvenile as provided by this section . . . ."). The State charged Appellee as an adult in this case. Appellee subsequently filed a motion for certification as a juvenile or, in the alternative, as a Youthful Offender.
¶4 At a reverse certification hearing, it is Appellee's burden to overcome the presumption and prove that he should be certified as either a child or as a youthful offender. C.L.F. v. State, 1999 OK CR 12, ¶ 4, 989 P.2d 945, 946. Title 10A O.S.2011, § 2-5-205(E) directs that when ruling on a motion for certification as a youthful offender or juvenile, that the court shall consider the following seven guidelines with greatest weight to be given to the first three listed:
1. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
2. Whether the offense was against persons, and, if personal injury resulted, the degree of personal injury;
3. The record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions;
4. The sophistication and maturity of the accused person and the capability of distinguishing right from wrong as determined by consideration of the person's psychological evaluation, home, environmental situation, emotional attitude and pattern of living;
5. The prospects for adequate protection of the public if the accused person is processed through the youthful offender system or the juvenile system;
6. The reasonable likelihood of rehabilitation of the accused person if such person is found to have committed the alleged offense, by the use of procedures and facilities currently available to the juvenile court; and
7. Whether the offense occurred while the accused person was escaping or on escape status from an institution for youthful offenders or delinquent children.
Id.
¶5 In the present case, Judge Weedon granted Appellee's motion for certification as a Youthful Offender. "Absent an abuse of discretion, the . . . judge, as trier of fact, has the discretion and the prerogative to assess the credibility of the witnesses and to weigh and value their testimony and opinions." R.J.D. v. State, 1990 OK CR 68, ¶ 16, 799 P.2d 1122, 1125. We have defined an abuse of discretion as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented." State v. Keefe, 2017 OK CR 3, ¶ 7, 394 P.3d 1272, 1275 (quoting Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170).
¶6 Granting Appellee's motion for certification as a Youthful Offender in this case was an abuse of discretion. Sufficient evidence is not found in this record to support the lower court's ruling that priority was given to the first three guidelines set forth in § 2-5-205(E). The lower court's findings for each criteria in Section 2-5-205(E) does not support her conclusion that Appellee met his burden by a preponderance of the evidence. See C.R.B. v. State, 1999 OK CR 1, ¶ 20, 973 P.2d 339, 342 (defendant has the burden to prove by preponderance of the evidence that he should be treated as a youthful offender). There is insufficient evidence in this record to support overriding the presumption that Appellee be treated as an adult.
¶7 The first three factors mandated for consideration by Section 2-5-205(E) do not support Appellee's quest for Youthful Offender status. The present charges were unquestionably committed in an aggressive, violent, premeditated and willful manner; were directed against C.T. and his mother; resulted in the death of C.T.'s mother and in C.T. being shot. Moreover, C.T. witnessed his mother being fatally shot while his brother hid in an adjacent bedroom. But for C.T. feigning death, this may have been a double homicide. The psychological toll on the surviving victims must be considered as well. Finally, Appellee's past history of violence towards his classmates likewise counsels against granting Appellee Youthful Offender status. That is particularly so considering the lower court's finding--fully supported by the evidence--that Appellee portrays all of his school fights "as either justified or paints himself as the victim." Order at 9; (Tr. 827). From the outset, the three factors receiving the greatest weight in this analysis cut against granting Youthful Offender status.
¶8 It is the fourth, fifth and sixth factors upon which the lower court excessively relied to overcome the presumption of adult charging in the present case. The lower court concluded that Appellee's above-average intelligence, along with his ability to distinguish right from wrong, counseled in his favor. The lower court acknowledged that Appellee "is immature for his age and lacks insight into his own behavior, is impulsive, violent, isolates himself, and has an unstable home." Order at 10. The court acknowledged too the many psychopathic characteristics and tendencies revealed by Appellee's psychological testing. This included moderate risks of grandiose sense of self-worth, pathological lying, manipulation for personal gain and high risks for impression management, lack of remorse, failure to accept responsibility and poor anger control.
¶9 According to Jacqueline Bontrager, the OJA psychological clinician who conducted the evaluation in this case, Appellee has a "moderate" risk level for committing future violent criminal acts. Bontrager admits that she did not consider the nature of the present charges in conducting Appellee's risk assessment. Bontrager was also unable to say whether consideration of the nature of the current charges would change her assessment of Appellee's risk of future violent acts. The lynchpin for Bontrager's conclusions that Appellee had a good chance at being rehabilitated in the Youthful Offender program while also protecting the public was based on treatment of Appellee's major depression. However, when asked how treating Appellee's major depression would reduce his risk of committing violent acts, Bontrager was unable to give a coherent explanation for this conclusion:
Q. Let me ask you this. He's currently a moderate risk to reoffend?
A. Uh-huh.
Q. To perpetrate another violent crime; correct?
A. (Witness nods head.)
Q. Can you say with any degree of certainty that treatment for his major depressive disorder, trauma history, all the things we have talked about, if it is successful, can you say with any degree of certainty that that would decrease his risk level?
A. Yes.
Q. Tell me why.
A. I think--okay. I think for someone who is reporting symptoms of depression, psychotic features, hearing things, not able to describe, visual hallucinations that he's experiencing, I think treatment for that would contribute to--would lessen the likelihood of--I don't know.
(Tr. 856) (emphasis added). Defense counsel did not follow-up with Bontrager on this point on cross-examination. Nor was this specific issue addressed in the testimony of Dr. Trentham or Dr. Hand who each endorsed Bontrager's work.
¶10 Further, Bontrager's conclusion that Appellee's amenability to treatment was "good" based on his "positive attitude" towards treatment and intellect is not supported by the record. Appellee told Bontrager during the evaluation that he didn't really need treatment. Bontrager acknowledged this fact in her testimony but claimed Appellee expressed that he wanted treatment at some point towards the end of the evaluation. Bontrager's account of this conversation in her written report, however, suggests little enthusiasm on Appellee's part to undergo treatment for major depression:
When asked if he believes he currently needs counseling, [B.C.E.T.] responded, "Not really. There's nothing for me to talk about. I don't even know why I experience the depression and everything else." When asked what he would work on if he were in counseling, he stated, "Something to get the voices to stop in my head . . . and make my body act like it's supposed to." When asked to clarify his last statement, [B.C.E.T.] stated, "Being able to relax and tense up."
(O.R. 68; Tr. 824, 883-84; Def's Ex. 6 at 5). Neither Dr. Trentham nor Dr. Hand in their testimony added to, or expanded upon, this account of Appellee's views on treatment.
¶11 As acknowledged by the lower court, Appellee's claim of hearing voices is inconsistent throughout his responses during the psychological evaluation. Appellee's parents were unaware of him having any history of depression (he claimed to have been previously diagnosed and treated for this already). Nor is there any prior medical documentation of either depression or auditory hallucinations in Appellee. The psychological evidence does show that Appellee misrepresents himself, is immature, overreacts to stress, has anger management issues, is attention seeking, lacks psychological insight into his problems and seeks concrete solutions to his problems like killing a classmate with whom he has a problem. The total record does not support the lower court's conclusion that there is a reasonable likelihood Appellee can be rehabilitated within the OJA Youthful Offender system.
¶12 When the first three factors of the analysis are given the appropriate weight as required by the statute, this is not a close case for showing abuse of the lower court's discretion in certifying Appellee as a Youthful Offender. The lower court focused excessively on the fourth, fifth and sixth factors in contradiction of the statutory command that the first three factors be given greater weight. Moreover, the record evidence does not support basic conclusions underpinning the lower court's findings with respect to the fourth, fifth and sixth factors. When considering the balance of these factors, it is clear that Appellee did not overcome the statutory presumption that he be charged as an adult in this case.
¶13 I see little difference between the present case and our recent decision in State v. K.G.O., No. JS-2017-909, slip op. (Okl.Cr. Dec. 21, 2017) (unpublished), where we reversed the lower court's certification of the appellee as a Youthful Offender. Sufficient evidence was not found in the record to support the lower court's ruling that priority was given to the first three guidelines. Further, the lower court's findings for each criteria in Section 2-5-205(E) did not support the court's conclusion that K.G.O. met his burden by a preponderance of the evidence. We found that the record presented a lack of evidence to support overriding the presumption that K.G.O. be treated as an adult.
¶14 My analysis of the present case does not amount to a reweighing of the factors presented to the court below. Rather, my conclusion is based on whether the record evidence supports the lower court's ruling (it does not) and whether the lower court gave greater weight to the nature of the crime, the victims' personal injuries and Appellee's past history of violent acts (the court did not). Although we review the lower court's decision for an abuse of discretion, that does not amount to abject deference. Today's decision, in true form-over-substance fashion, fails to appropriately scrutinize the lower court's decision and is inconsistent with K.G.O. That is no doubt little comfort to C.T. and his family who can look forward to years of navigating a legal system that, upon conviction, will treat Appellee as a victim of a broken childhood instead of the aspiring junior psychopath that he appears to be.
¶15 I would grant the State's appeal and order that Appellee stand trial as an adult. I dissent from the majority's decision to affirm the order in this case certifying Appellee as a Youthful Offender.
 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1990 OK CR 68, 799 P.2d 1122, R.J.D. v. STATE
Discussed
 1990 OK CR 71, 799 P.2d 142, W.D.C. v. STATE
Discussed
 1995 OK CR 77, 909 P.2d 806, CARGLE v. STATE
Discussed
 2000 OK CR 26, 17 P.3d 1041, 71 OBJ 3260, J.R.L. v. STATE
Discussed
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2017 OK CR 3, 394 P.3d 1272, STATE v. KEEFE
Discussed
 2000 OK CR 11, 4 P.3d 702, 71 OBJ 1304, Bland v. State
Discussed
 1972 OK CR 55, 494 P.2d 344, BROWN v. STATE
Discussed
 1999 OK CR 1, 973 P.2d 339, 70 OBJ 234, C.R.B. v. State
Discussed
 1999 OK CR 12, 989 P.2d 945, 70 OBJ 946, C.L.F. v. State
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 652, Shooting with Intent to Kill - Assault and Battery with Deadly Weapon, etc.
Cited
 21 O.S. 701.7, Murder in the First Degree
Cited
 21 O.S. 1431, Burglary in First Degree
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA