**Edmond Lee GRAHAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. M–76–542.**

Court of Criminal Appeals of Oklahoma.

Jan. 3, 1977.

Rehearing Denied Feb. 1, 1977.

Baker, Baker & Martin, C. Rabon Martin, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Janet L. Cox, Legal Intern, for appellee.

**ORDER WITHDRAWING OPINION OF NOVEMBER 5, 1976 AND SUBSTITUTING ATTACHED OPINION THEREFOR**

NOW, on this 3rd day of January, 1977, upon review of the Petition for Rehearing filed in the above styled and numbered cause, and being fully advised in the premises, we find that the Opinion delivered to the Clerk on November 5, 1976, should be withdrawn and the attached Opinion substituted therefor.

IT IS THEREFORE THE ORDER OF THIS COURT that the Opinion delivered to the Clerk on the 5th day of November, 1976, in the above styled and numbered cause be WITHDRAWN, and the attached Opinion substituted therefor.

WITNESS OUR HANDS, and the Seal of this Court, this 3rd day of January, 1977.

TOM BRETT, Presiding Judge

HEZ J. BUSSEY, Judge

C. F. BLISS, Jr., Judge

OPINION

BUSSEY, Judge:

Appellant, Edmond L. Graham, hereinafter referred to as defendant, was charged in the District Court, Creek County, Case No. CRM–75–105, for the offense of Unlawful Possession of Marijuana, in violation of 63 O.S.Supp.1972, § 2–402(B–2). He was tried by a jury and convicted of the aforementioned crime. His punishment was fixed by the jury at one (1) year imprisonment in the county jail. From said judgment and sentence, a timely appeal has been perfected to this Court.

The facts pertinent to this case are as follows. On Sunday, April 13, 1975, at approximately 3:30 p. m., Officers Stanley Carver and Tony Sanders of the Sapulpa Police Department, were on routine patrol when they discovered an illegally parked vehicle in front of a residence. Officer Carver was off duty at this time, having finished his shift at approximately 3:00 p. m. that afternoon, but he was riding in the police vehicle along with Officer Sanders, who was on duty and on his routine patrol.

Officer Carver testified that, in his opinion, the illegally parked vehicle was obstructing the flow of traffic on a two-lane black-top road. On cross-examination, however, Officer Carver admitted that on that particular Sunday afternoon, the road, which was in a rural area and not in a residential area, was not heavily traveled, although there was "some traffic."

It was also established by Officer Carver's own testimony, that the Sapulpa city line ran down the middle of the road where the car was illegally parked. The car, Officer Carver testified, was parked outside the city limits, although a portion of the vehicle was "sticking out" and was within the city limits. At any rate, the officer's testimony indicated that the illegally parked vehicle was obstructing traffic on both sides of the street.

At this time, Officer Carver went to the defendant's residence to ask that the illegally parked vehicle be moved. The defendant's home, Officer Carver testified, was outside the city limits. Furthermore, Officer Carver stated that he knew the residence to belong to Eddy Graham, the defendant, having been personally acquainted with him for approximately two years. The transcript further revealed that Officer Carver and the defendant had, at sometime in the past, double-dated two sisters. The defendant testified that at one time Officer Carver attempted to date the very same girl that the defendant was dating. When called as a rebuttal witness, Officer Carver did not deny this, although he did testify that insofar as he was concerned, there were never any hard feelings between him and the defendant concerning this matter.

After reaching the residence, Officer Carver knocked on the door. The defendant answered and greeted Officer Carver. Officer Carver then told him to see about getting the car moved. The defendant replied that he would have the car moved, and started to close the door. It was established that the car in question did not belong to the defendant, but rather, it belonged to one of his guests who was visiting at the time.

During this entire verbal exchange, Officer Carver was standing outside the defendant's residence and could not see inside the home. When the defendant attempted to close the door, Officer Carver testified that at this point he, "detected a strong odor of marijuana coming through the screen door." Officer Carver called Officer Sanders to assist him and they both entered the defendant's residence, over the defendant's protest. The defendant testified that he asked for a search warrant, which could not be produced. Officer Carver testified that he, in fact, did not have a search warrant, but that "in the police academy we were told we could arrest on marijuana on the smell of marijuana." [Tr. 28]

Upon entering the residence, Officer Carver noticed that there were two other individuals in the defendant's home. One of them, Kenneth Perry, was the defendant's roommate at the time. The other, Randy Archer, was a friend visiting the defendant. Officer Carver testified that no one was smoking marijuana when he entered the residence. He did, however, find a bag of marijuana seeds on the defendant's coffee table, as well as two "hash pipes." All of these items were allegedly in "plain view" after Officer Carver entered the residence. The defense argued that it did not know where the marijuana seeds came from and that the first time the defendant saw the marijuana seeds was when Officer Carver held them in his hands. All three individuals were then placed under arrest, and two of them, including the defendant, were handcuffed.

Another police unit was then called and two other police officers arrived at the scene. Accompanying these two other officers was Deputy Sheriff Junior Rippy. When asked why he had arrived at the scene, he testified that the alleged offense was committed in his county and outside the city limits.

After Deputy Rippy was told what had transpired, he asked that the handcuffs be removed. He stated that since only an alleged misdemeanor was involved, and since he knew the people arrested, that in his opinion there was no need for handcuffs. The contraband was confiscated by the officers, but neither the defendant nor anybody else was taken into custody at that time. Deputy Rippy further testified that after the handcuffs were removed, he told the people arrested that if he needed them he would return. All of the officers then left, leaving behind them all the persons previously arrested.

The very next day, on Monday, April 14, 1975, charges of Unlawful Possession of Marijuana were filed against the defendant, and an arrest warrant was issued and the defendant was subsequently taken into custody.

■ The sole issue determinative of this appeal is: may an off-duty police officer,

under the facts and circumstances as herein presented, acting under color of law, conduct a warrantless search of a residence outside the corporate limits of the city?

We are of the opinion that this question must be answered in the negative. The police officer should have notified the Sheriff's Office of Creek County, or any other law enforcement agency having jurisdiction outside the city limits, for their investigation in disposition of this matter. In the alternative, if the vehicle was, in fact, obstructing traffic within the corporate limits of the city, as the officer testified, he should have radioed in and had the vehicle towed away. There is no evidence in this case reflecting an arrest by the officer preceding the search.

■ There are, of course, exceptions to the general rule that a police officer's authority cannot extend beyond his jurisdiction. If a police officer is in hot pursuit of a person who has committed an unlawful act within his jurisdiction, then such police officer is, of necessity, permitted to go outside his jurisdiction to apprehend such person. *United States v. Braggs*, 189 F.2d 367 (10th Cir. 1951). Furthermore, one municipality can request the assistance of another municipality's police officers pursuant to 11 O.S.1971, § 20.6. These examples are but illustrations of exceptions to the general rule, and this opinion should not be construed as limiting police officers in operating outside their jurisdiction where it is otherwise authorized by statute or decisions of this Court or Federal Courts which create other exceptions. However, none of these exceptions to the general rule limiting the policeman's authority to his jurisdiction are applicable in the instant case. The police officer in the case at bar was acting outside his jurisdiction, and as such, outside the scope of his authority in reference to search of defendant's home. We, therefore, hold, that the entry and warrantless search of the defendant's residence, which was situated beyond the city limits, is invalid, and the seizure of the contraband from such search should have been suppressed.

Accordingly, the judgment and sentence appealed from is hereby REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS.

BRETT, P. J., and BLISS, J., concur.

## ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE FORTHWITH

A Petition for Rehearing was timely filed by the Appellee, the State of Oklahoma, in the above styled and numbered cause, requesting that this Court withdraw the Opinion heretofore entered on January 3, 1977, and specifically vacate that portion of the Opinion limiting a police officer's authority to act without the corporate limits of the city. Appellee assumes, without supporting authority, that the off-duty police officer, accompanied by his co-officer who was on duty, was "acting within the scope of the public authority conferred upon him."

Appellee has failed to cite authority which specifically authorizes an off-duty officer, or his companion, to conduct a search and seizure outside the corporate limits of the city, but relies on the statement found in *United States v. Braggs*, 189 F.2d 367 (10th Cir. 1951), wherein dicta the Court stated:

"In Oklahoma, a policeman is a state, rather than a city officer."

We reiterate that the holding in *United States v. Braggs*, supra, recognizes:

"If a police officer is in hot pursuit of a person who has committed an unlawful act within his jurisdiction, then such police officer is, of necessity, permitted to go outside his jurisdiction to apprehend such person."

To give literal application to the dicta in *Braggs* that a policeman is a state officer, would authorize each municipality to employ city policemen and grant them statewide jurisdiction to arrest, search and seize, even though the municipality is only empowered to regulate matters within its corporate limits except where the Legislature

has otherwise extended its jurisdiction. In short, every municipality would have the authority to create a State Bureau of Investigation. We believe such a result would be absurd and find no merit to Appellee's Petition for Rehearing.

As we have heretofore stated in our Opinion of January 3, 1977:

". . . [T]his opinion should not be construed as limiting police officers in operating outside their jurisdiction where it is otherwise authorized by statute or decisions of this Court or Federal Courts which create other exceptions. . . ."

We call to Appellee's attention the fact that the Oklahoma State Legislature is now in session and if the authority of a police officer of a municipality is to be extended the Legislature is, indeed, the proper forum from which to secure, by appropriate legislation, an extension of their authority to act outside the corporate limits in addition to their jurisdiction now prescribed by law.

IT IS THEREFORE THE ORDER OF THIS COURT that the Petition for Rehearing be, and the same is hereby, DENIED, and the Clerk of this Court is directed to issue the Mandate FORTHWITH.

WITNESS OUR HANDS, and the Seal of this Court, this 1st day of February, 1977.

HEZ J. BUSSEY, Presiding Judge

C. F. BLISS, Jr., Judge

TOM BRETT, Judge