Anna Louise PHIPPS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–90–307.

Court of Criminal Appeals of Oklahoma.

May 4, 1992.

Publication Directed Nov. 9, 1992.

C. Rabon Martin and Stuart Southerland, Tulsa, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and Elizabeth J. Bradford, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Anna Louise Phipps, appellant, waived her right to a jury trial and proceeded to non-jury trial by stipulating to the testimony given at preliminary hearing. Appellant was found guilty by the trial court of the crime of Unlawful Possession of Marijuana with Intent to Distribute, in violation of 63 O.S.Supp.1988, § 2–401, in Case No. CF–88–5270 in the District Court of Tulsa County, and sentenced to four (4) years imprisonment and a $4,000 fine. From this Judgment and Sentence, appellant now appeals.

The record of the preliminary hearing reveals the following. On December 23, 1988, Larry Kinney, an off-duty Police Undercover Narcotics Officer, was driving his personal vehicle when he observed a woman driving a blue Lincoln that he recognized as being connected with a marijuana investigation he had conducted six months earlier. Kinney had been unable to learn the residence of the registered owner of the car during the previous investigation, so he began to follow it.

Before long, the Lincoln pulled into a Tulsa convenience store parking lot and stopped next to appellant's Oldsmobile. The driver of the Lincoln got out and approached appellant. After a short conversation, both women drove to the back of the parking lot, next to an empty store, where they had another short conversation. Afterwards, they drove about a block and stopped in an apartment complex parking lot. Both women exited their cars and opened up their trunks. The driver of the Lincoln removed a box from her trunk and placed it in the Oldsmobile trunk. The cars then left, each going in a different direction.

Based on his suspicion that a drug transaction had just occurred, Officer Kinney radioed for a uniformed police officer with a marked car to stop appellant. Meanwhile, Kinney followed appellant as she drove through Tulsa and approached Broken Arrow. Officer Kinney's radio reception began to weaken as he followed appellant out of Tulsa, so the officer in the marked backup responding to Kinney's request for assistance radioed for a Broken Arrow police officer to assist him.

Before any of the officers in the marked cars were able to catch up, appellant apparently recognized that she was being followed by Kinney, and pulled into a Broken Arrow convenience store. Officer Kinney pulled in next to her. She immediately began to back out, so Kinney backed out as well. Appellant then quickly pulled back in, as did Kinney. Both then exited their cars. Appellant angrily approached Officer Kinney and asked if he were following her. He identified himself as a Tulsa police officer and showed appellant his badge. He then asked her for identification, which she produced in the form of a drivers license.

Officer Kinney then began to question appellant about where she had been and

with whom she had met. At this point, two Tulsa patrol units and one Broken Arrow unit arrived on the scene. Kinney continued the questioning and told appellant that he had observed the transfer of the box in Tulsa. He also told her that he suspected the person she got the box from was involved in marijuana trafficking. He then asked her what was in the box. According to Kinney, appellant said nothing in response, but sighed, walked over to her trunk, opened it, and threw her keys on the sidewalk. Kinney then asked appellant for permission to look in the box, to which she replied, "Go ahead, it's not mine. I don't know what's in it." Kinney sliced open the box with a knife, and saw and smelled what appeared to be marijuana. He then arrested appellant and placed her in one of the Tulsa patrol cars.

## I.

■ The sole issue determinative of this appeal is whether a police officer, under the facts and circumstances presented herein, acting under color of law, can conduct a consensual search of a car outside of his jurisdiction. We conclude that he cannot.

Generally, a police officer's authority cannot extend beyond his jurisdiction. *Meadows v. State*, 655 P.2d 556, 557 (Okl. Cr.1983). There are, of course, exceptions for (1) hot pursuit and (2) when one municipality has requested the assistance of another municipality's officers pursuant to Title 11, Section 34–103. However, neither of these exceptions is applicable in the present case.

Once he left Tulsa, Officer Kinney was acting outside his jurisdiction, and as such, outside the scope of his authority as a police officer. *Graham v. State*, 560 P.2d 200, 203 (Okl.Cr.1977). In this situation, his authority was no greater than that of a private citizen. *Meadows* at 557. In Oklahoma, a private person may arrest another: (1) for a public offense committed or attempted in his presence; (2) when the per-

son arrested has committed a felony although not in his presence; (3) when a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it. 22 O.S. 1981, § 202. Here, however, Officer Kinney cannot be said to be merely a private citizen since he was acting under color of law. When he got out of his car, Kinney showed appellant his badge and told her he was a police officer.[1]

The Superior Court of New Jersey, Law Division, Criminal, was faced with a situation similar to the case before us in *State v. Williams*, 136 N.J.Super. 544, 347 A.2d 33 (Ct.Law Div.1975). In that case, the defendant was attempting to suppress evidence of possession of stolen property, claiming that the search of his vehicle was unlawful because it was conducted by a city patrolman outside of city limits. There, as here, the officer obtained consent to search defendant's vehicle. However, the New Jersey court held that this consent was invalid because the defendant believed he was consenting to police officer's request to search his vehicle, not to a request by a private citizen. *Williams*, 347 A.2d at 35. The court then held the State could not justify the consent to search on the basis of a private citizen's right to arrest. *Id.*

We find this reasoning very persuasive and in accord with our previous decisions. *See Nickell v. State*, 746 P.2d 1155 (Okl.Cr. 1987); *Meadows v. State*, 655 P.2d 556 (Okl.Cr.1983); *Graham v. State*, 560 P.2d 200 (Okl.Cr.1977). Had Officer Kinney been acting within his jurisdiction, appellant's consent would certainly have been adequate to allow his search of her vehicle. *Lumpkin v. State*, 683 P.2d 985 (Okl.Cr. 1984).

■ There can be no doubt, however, that had a private citizen told appellant that they suspected she was transporting marijuana and asked to look in her trunk, appellant would not have let them. Thus, it is clear that Officer Kinney was acting

---

1. Thus the situation here is unlike that in *Meadows, supra,* where the officer did not hold himself out to be a police officer and at no time during his investigation did any of the participants know he was an officer.

under color of law and the appellant believed that he had such authority when he asked to search appellant's vehicle. We therefore hold that the search of appellant's car while it was beyond the Tulsa city limits is invalid, and the seizure of the contraband from such search should have been suppressed. *Graham* at 203.

Finally, we find that regardless of the propriety of the search, the arrest itself was illegal since Officer Kinney did not follow the dictates of Title 22, Section 205, by either taking appellant before a magistrate or turning her over to a peace officer. In this case, the police officer to whom Kinney delivered appellant was also from the Tulsa police force, and therefore also a private citizen for the purposes of Section 205.

Officer Kinney's best option under the circumstances was to wait for the Broken Arrow police to arrive on the scene. As an alternative, he could have tried to obtain appellant's consent to a search without showing his badge or identifying himself as a police officer. Though it is unlikely she would have done so, had appellant consented, Kinney could have then searched her car. Subsequent to the search, he could have identified himself as an officer and made a citizen's arrest. But even then, he would have needed to deliver her to the Broken Arrow police or take her to a magistrate.

Because we reverse on these grounds, we find it unnecessary to discuss appellant's other proposition of error. The judgment and sentence appealed from is hereby REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS.

LANE, P.J., and BRETT and PARKS, JJ., concur.

LUMPKIN, V.P.J., dissents and files an opinion.

LUMPKIN, Vice–Presiding Judge, dissenting:

I must respectfully dissent to the Court's decision in this case. The Appellant appears to have abandoned her standing to object to the search when she replied to Officer Kinney's question regarding what was in the box, "[g]o ahead, it's not mine. I don't know what's in it". In addition, the Court fails to consider the facts which reveal Officer Kinney was in fresh pursuit of Appellant based on his knowledge and observations. The facts presented provided a sufficient basis for a stop and detention for further investigation. See *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

However, the facts of this case reveal Officer Kinney did not stop Appellant. It was Appellant who stopped and confronted the officer. Needless to say, the officer did the appropriate thing when he identified himself as a police officer, both from the standpoint of relieving Appellant's anxiety regarding his identity and to preclude a dangerous situation from developing. Appellant's actions and statements once the officer identified himself deprive her of the standing to object to the evidence seized. See *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

I find it interesting the Court fails to even discuss the concept of fresh pursuit in this case. Especially when the evidence reveals Officer Kinney maintained surveillance throughout the entire transaction. I find it more persuasive to look to the definition of "fresh pursuit" as defined by the Oklahoma Legislature, rather than the basis of consent as defined by courts of New Jersey, in addressing this issue. The Uniform Act on Fresh Pursuit is codified in 22 O.S.1981, § 221 et seq. This Act specifically deals with the powers of law enforcement officers from other states who enter this state in fresh pursuit of a person. Therefore, the language of the Act is not controlling in this situation where a city law enforcement officer crosses into another jurisdiction in fresh pursuit of a person whom he has probable cause to believe has committed an offense in his jurisdiction. However, the definition of "fresh pursuit" is relevant for this Court to review in establishing the scope of authority of law enforcement officers who act in like circumstances. Section 225 states

The term "fresh pursuit" as used in this act shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is a reasonable ground for believing that felony has been committed. Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.

The actions of Officer Kinney are definitely within the scope of this definition. If Appellant had been followed into Oklahoma from another state, rather than from Tulsa to Broken Arrow, the actions of the officer under the facts presented here would be affirmed. I cannot fathom why the citizens of Oklahoma should not be provided the same protections through the abilities of Oklahoma law enforcement officers to act in "fresh pursuit" as are provided the citizens of other states whose law enforcement officers may follow an offender into Oklahoma. It appears the analysis in this case should be based on the facts of the case rather that the unnecessary analogy to arrest by a private citizen. I must therefore dissent to the Courts decision in this case.