2004 OK CR 22

**UNITED STATES OF AMERICA,**
**Plaintiff**

v.

**Mike Paul SAWYER, a.k.a. Motor Mike, Defendant.**

**No. CQ–2004–240.**

Court of Criminal Appeals of Oklahoma.

June 8, 2004.

## ORDER ANSWERING CERTIFIED QUESTION OF LAW

¶1 The Honorable Sven Erik Holmes, Chief Judge for the United States District Court for the Northern District of Oklahoma, has certified the following question pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, § 1601–1611:

> Whether police officers from Lawrence, Kansas, who identified themselves as police officers to the owner of a building located in Bartlesville, Oklahoma, but informed the owner prior to requesting consent to search that they were from Kansas and without authority to arrest him, could legally conduct such a search in Oklahoma, and whether the fruits of the subsequent search are admissible in evidence, considering that both Oklahoma and Kansas have statutory prohibitions against police officers acting in their official capacities outside their respective jurisdictions? [1]

¶2 The following relevant facts were provided by the certifying court:

In August 2000, two police officers from Lawrence, Kansas (hereafter "Kansas offi-

cers"), investigating stolen motorcycles and motors, traveled to Bartlesville, Oklahoma, to interview Defendant. The Kansas officers notified the Bartlesville Police Department they would be coming in to Bartlesville as part of their investigation, but their travel to Oklahoma and investigation was not requested by the Bartlesville Police Department. When the Kansas officers arrived in Bartlesville, they stopped at the Bartlesville Police Department, informed the department they were in the city and the purpose of their visit. The Kansas officers then went to Defendant's place of employment. They were not accompanied by any member of the Bartlesville Police Department.

¶3 At Defendant's place of employment, the Kansas officers identified themselves as police officers to Defendant's company manager. Through the manager, the Kansas officers arranged to interview Defendant in a private office located at his place of employment.

¶4 Upon contact with Defendant, the officers identified themselves as Kansas police officers and told Defendant he was not under arrest because they were without authority to arrest him in Oklahoma. The Kansas officers wore street clothes with badges, handcuffs, and firearms on their belts. The Kansas officers read Defendant his *Miranda*[2] rights and interviewed Defendant for about one hour. Defendant provided the officers with both a written and verbal statement.

¶5 After Defendant provided his statement, the Kansas officers asked Defendant to take them to his motorcycle motor sales business in Bartlesville. Kansas officers followed Defendant, who drove in his personal vehicle, to the location of his business. At the shop, at the request of Kansas officers, Defendant unlocked the door and allowed them inside. Once inside, the Kansas officers asked Defendant to sign an official Consent to Search form from the Lawrence Kansas Police Department. Defendant signed the consent form.

---

**1.** *See* 11 O.S.2001, § 34–103; K.S.A. § 22–2401a (2001).

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

¶ 6 The Kansas officers then searched Defendant's business. Towards the end of their search, after finding numbers on most of the engines, the Kansas officers contacted the Bartlesville Police Department and asked them to bring a camera to the business. Three Bartlesville police officers came to Defendant's business and took photographs. At the request of the Kansas officers and with Defendant's consent, the three Bartlesville police officers removed six engines from Defendant's shop; three had altered serial numbers and three were believed stolen.

¶ 7 The Kansas officers then obtained consent from Defendant to take records from his residence, and there they obtained additional records from Defendant's wife. Afterwards, Defendant was interviewed again by the Kansas officers at the Bartlesville Police Department.

¶ 8 Four days later, the Kansas officers notified the Bartlesville Police Department of the results of their investigation/examination of the serial numbers from the engines seized from Defendant's shop. The next day, Bartlesville police officers obtained a search warrant from a judge of the State of Oklahoma for another search of Defendant's shop. Bartlesville police officers executed that warrant and seized additional items which included seventeen motorcycle motors.

¶ 9 The United States District Court for the Northern District of Oklahoma found at all times the Lawrence Kansas police officers were acting under color of law.

### AUTHORITY TO ANSWER

 ¶ 10 Oklahoma adopted the Uniform Certified Question of Law Act in July of 1973. 20 O.S.2001, § 1601. Pursuant to the Act, this Court

> may answer a question of law certified to it by a court of the United States . . . if the

answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or the Court of Criminal Appeals, constitutional provision, or statute of this state.

20 O.S.2001, § 1602; *see Canady v. Reynolds,* 1994 OK CR 54, ¶ 8, 880 P.2d 391, 393. "This Court has the power to give the present state of the law as well as use the opportunity to create new precedents" when answering a certified question of law. *Moore v. Gibson,* 2001 OK CR 8, ¶ 6, 27 P.3d 483, 485; *Canady,* 1994 OK CR 54, ¶ 12, 880 P.2d at 395. In so doing, we may reformulate or reinterpret a question of law certified to this Court. *Gibson, id.; Canady, id.*

### *DISCUSSION*

 ¶ 11 Generally, a police officer's authority cannot extend beyond his jurisdiction. *Graham v. State,* 1977 OK CR 1, ¶¶ 13–14, 560 P.2d 200, 203. Recognized exceptions to this general rule are (1) hot pursuit, (2) when one municipality has requested assistance pursuant to 11 O.S.2001, § 34–103, and (3) when an officer is serving an arrest warrant. *Id.,* 1977 OK CR 1, ¶ 14, 560 at 203, 560 P.2d 200, *citing United States v. Braggs,* 189 F.2d 367 (10th Cir.1951)(hot pursuit); 11 O.S.2001, § 27–113 (service of arrest warrant "any place within this state"); 11 O.S.2001, § 34–103 (requesting assistance from another municipality). Otherwise, once outside the city limits of the municipality by which they are employed, the officer acts as a private citizen with no greater authority than that of a private citizen. *Staller v. State,* 1996 OK CR 48, ¶ 10, 932 P.2d 1136, 1139–1140; *see also State v. Ramsey,* 1993 OK CR 54, ¶ 10, 868 P.2d 709, 712; *Phipps v. State,* 1992 OK CR 32, ¶ 9, 841 P.2d 591, 593.

 ¶ 12 This Court's decision in *Phipps* is dispositive of the question certified.[3] In

---

3. The dissent claims *Phipps* is inapplicable to this case because the Kansas officers did not actually arrest Defendant. This fact does not make *Phipps* inapplicable. The issue in *Phipps* was the same as that presented here: Is a consent to search, obtained by a police officer acting outside his jurisdiction under color of law, valid? Clearly in *Phipps,* the answer was no, and there is no reason to reach a different result here.

The question presented to this Court concerned the validity of a consent to search obtained by police officers who were acting outside their jurisdiction. For the dissent to describe the Kansas officers' contact with Defendant as a "consensual" encounter requires one to ignore the facts which show these officers at all times acted under color of law and facts from which one can infer the Defendant believed he was

*Phipps*, this Court held a police officer acting outside his jurisdiction may not conduct a consensual search if the consent is obtained while the officer is acting under color of law. *Id.*, 1992 OK CR 32, ¶ 7, 841 P.2d at 593. In *Phipps*, where the officer identified himself as a police officer and showed his badge before obtaining consent to search, we noted:

> [t]here can be no doubt, however, that had a private citizen told appellant they suspected she was transporting marijuana and asked to look in her trunk, appellant would not have let them. Thus, it is clear that Officer Kinney was acting under color of law and the appellant believed that he had such authority when he asked to search appellant's vehicle. We therefore hold that the search of appellant's car while it was beyond the Tulsa city limits is invalid, and the seizure of the contraband from such search should have been suppressed.

*Id.*, 1992 OK CR 32, ¶ 12, 841 P.2d at 593–594.

¶ 13 In this case, there is no question that the Kansas officers were outside their jurisdiction. Their actions were not authorized by any interlocal governmental agreement relating to law enforcement. Neither 11 O.S. 2001, § 34–103 nor K.S.A. (2001) § 22–2401a mentions or contemplates extending a municipal police officer's jurisdiction from one state to another state.

■ ¶ 14 Further, the District Court found the officers were "at all times relevant hereto . . . acting under color of law." While the Kansas officers told Defendant they were without authority to arrest him, after they mirandized Defendant and questioned him for over an hour, they asked for consent to search his business and asked him to sign an official Consent to Search form from the Lawrence Kansas police department. A private citizen, acting without official authority, who asks another to search his home or business would not ask such person to also sign a written consent form with a police division name on it. As we noted in *Phipps*, it is highly doubtful a person would sign such a consent under those circumstances. It is evident these officers were not acting as private citizens and, through their display of official authority, they obtained consent to search from Defendant. Such consent, under *Phipps*, was invalid.

¶ 15 "At some point near the end of the search," the Kansas officers contacted the Bartlesville police department because they needed a camera to photograph items discovered during their search. Again, upon request of the Kansas officers, Defendant consented in writing to allow six engines to be removed from his shop. A few days later, the Kansas officers notified the Bartlesville police officers of the "results of their examination of the serial numbers on the engines found" at Defendant's shop, and the Bartlesville officers used that information to obtain a search warrant.

■ ¶ 16 Defendant's initial consent for the Kansas officers to search his business was invalid. Any evidence seen or obtained during that search could not be used to establish probable cause in the subsequent affidavit for a search warrant. *State v. Stuart*, 1993 OK CR 29, ¶ 19, 855 P.2d 1070, 1074; *Phipps*, 1992 OK CR 32, ¶ 12, 841 P.2d at 594; *Dale v. State*, 2002 OK CR 1, ¶ 10, 38 P.3d 910, 912 (fruits of search based upon involuntary consent would be suppressed). The evidence seized during the initial search as well as the evidence seized pursuant to the subsequently issued search warrant should be suppressed.

■ ¶ 17 The Kansas officers' request for assistance from the Bartlesville police department in photographing evidence and their second request for consent before removing items from the business was not a

---

dealing with police officers and not private citizens. The United States District Court did not ask this Court whether the Kansas officers could conduct a consensual search; those facts are not before us.

Nothing in Phipps or in this decision prohibits officers from other states from conducting investigations outside their jurisdictions. However, at the point such investigation involves a search or

an arrest, the law in this State protects its citizens and requires such actions be made by those with authority to conduct the same. Here, the Kansas police officers could not legally conduct the search of Defendant's business premises because they were acting under color of law when they obtained Defendant's consent to search. Because the Defendant's consent was not valid, the fruits of their searches were inadmissible.

sufficient intervening cause to purge the taint of the initial invalid consent and resulting unlawful search. *See McGaughey v. State*, 2001 OK CR 33, ¶ 40, 37 P.3d 130, 141; *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)(original taint of impropriety may be removed by intervening circumstances). Had the Kansas officers not gained entry to Defendant's business under color of law, they would not have gained entry at all and would not have had the opportunity to see and seize evidence with or without the assistance of the Bartlesville police department. We find no significant intervening factor occurred between the entry based upon invalid consent and any subsequent consent obtained in the presence of the Bartlesville officers "at the request of the Kansas officers."

¶ 18 Lastly, the facts provided suggest the Bartlesville police department used information gained by the Kansas officers during their search of Defendant's business to obtain a search warrant from a judge of this State for another search of Defendant's business. That search resulted in the seizure of seventeen additional motorcycle motors.

¶ 19 The evidence obtained pursuant to the search warrant also must be suppressed, because the evidence establishing probable cause for the issuance of the warrant was obtained by the Kansas officers acting under color of law while conducting the unlawful search of Defendant's business. *Lucas v. State*, 1985 OK CR 100, ¶ 11, 704 P.2d 1141, 1142 (evidence seized pursuant to a search warrant was discovered by exploitation of the illegal vehicle search would be suppressed as fruit of the poisonous tree); *Wong Sun*, 371 U.S. at 484, 83 S.Ct. at 416 (exclusionary prohibition of evidence seized during an unlawful search extends to the direct and indirect products of the search). All of the evidence seized during the search of Defendant's business was found as a direct result of actions taken by the Kansas officers while they were acting under color of law.

### ANSWER

¶ 20 For the reasons set forth above, we answer the question submitted as follows: Under Oklahoma law, police officers acting outside their jurisdiction under color of law, cannot legally obtain consent to search. As a result, the fruits of any subsequent search would not be admissible.

¶ 21 **IT IS SO ORDERED.**

¶ 22 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 8th day of June, 2004.

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Presiding Judge

/s/ Steve Lile, Dissenting. I join in Judge Lumpkin's Dissent
STEVE LILE, Vice Presiding Judge

/s/ Gary L. Lumpkin, Dissent (Writing Attached)
GARY L. LUMPKIN, Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR, Judge

LUMPKIN, J., Dissenting.

¶ 1 I must respectfully dissent to the analysis and answer provided to the certified question of law. The issue presented by the fact situation submitted by the United States District Court for the Northern District of Oklahoma is the ability of an officer to conduct an investigation outside his or her jurisdiction, not affect an arrest. This Court's Order fails to recognize that distinction.

¶ 2 In Oklahoma, the authority to arrest, either as a law enforcement officer or a private citizen, is controlled by statute. *See* 22 O.S.2001, §§ 186–209. It is these statutes that our case law has interpreted with regards to police officers acting outside of their jurisdiction. Now this Court seeks to apply this law relating to arrests to an entirely different area of criminal law procedure, i.e. pre-charging investigation and due process. I submit the Order fails to recognize and, in turn, apply the correct legal analysis to the facts presented.

¶ 3 Initially, we must recognize that Oklahoma does not have statutes which control the type of pre-charging investigation conducted by the law enforcement officers in this case. Therefore, we must look to state and federal case law for guidance.

¶ 4 The U.S. Supreme Court, as well as the Tenth Circuit Court of Appeals, has determined that there are three general types of encounters between citizens and the police. These are: (1) consensual encounters that are not Fourth Amendment Seizures since they only involve a person's voluntary cooperation with an officer's non-coercive questioning; (2) investigative detention, which are Fourth Amendment seizures justified only if there is a reasonable suspicion that the person has committed or is committing a crime; and (3) arrests which are Fourth Amendment seizures characterized by highly intrusive or lengthy detention and justified only if there is probable cause to believe that a person has committed or is committing a crime. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Hishaw*, 235 F.3d 565, 569 (10th Cir.2000).

¶ 5 For the following reasons, this case falls under the category of a consensual encounter between the police and the defendant. In *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the Supreme Court recognized that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. In analyzing whether a seizure or a consensual encounter has taken place, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter. *Id.*

¶ 6 In *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Supreme Court said:

Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

446 U.S. at 553–554, 100 S.Ct. at 1877 (internal citations omitted).

¶ 7 The Tenth Circuit, in *United States v. Zapata*, 997 F.2d 751 (10th Cir.1993), enumerated a number of factors to consider in determining whether a police-citizen encounter becomes a seizure. The court stated that we must look at the location of the encounter, "particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officer; whether and for how long the officers retained the defendant's personal effects, such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent." *Id.*, at 756. *See also United States v. Bloom*, 975 F.2d 1447, 1450 (10th Cir.1992) *overruled on other grounds, United States v. Little*, 18 F.3d 1499, 1504 (10th Cir.1994) (the ultimate issue of whether a seizure occurred is a question of law.)

¶ 8 An analysis of the above factors indicates that in the instant case a consensual encounter occurred between the Kansas officers and the defendant. First, the encounter occurred in a public setting, the defendant's place of business. The Kansas officers were dressed in plainclothes. Although they carried badges and weapons there is no indication either was used in a threatening or coercive manner. The officers identified themselves and informed the defendant they had no authority to arrest him. There was no show of force or restraint and the defendant was free to leave. Before talking with the defendant, the officers read him the *Miranda* warning. As the defendant was not in custody, it was not necessary for the officers to give him the *Miranda* warning. However, the *Miranda* warning did convey to the defendant that he did not have to answer the officers' questions. An analysis of all of

these factors clearly establishes that the initial encounter between the defendant and the Kansas officers was consensual.

¶ 9 After the initial interview, the defendant agreed to the officers' request to take them to his motorcycle motor sales business. The defendant drove separately, in his own vehicle, to the business, with the officers following behind. Once there, the defendant agreed to sign a consent to search form. As with the giving of the *Miranda* warning, it was not necessary for the officers to have obtained a signed consent form. As the Supreme Court stated in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973):

.. when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact *249 to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

412 U.S. at 248–249, 93 S.Ct. at 2059.

¶ 10 The Supreme Court also said:

While the Fourth and Fourteenth Amendments limit the circumstances under which the police can conduct a search, there is nothing constitutionally suspect in a person's voluntarily allowing a search.... And, unlike those constitutional guarantees that protect a defendant at trial, it cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment. We have only recently stated: '(I)t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals.' Rather, the community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense.

412 U.S. at 242–243, 93 S.Ct. at 2056. (internal citations omitted).

¶ 11 In this case, there is no evidence of any inherently coercive tactics—either from the nature of the police questioning or the environment in which it took place. The search took place at the defendant's place of business. "Since consent searches will normally occur on a person's own familiar territory, the specter of incommunicado police interrogation in some remote station house is simply inapposite." *Schneckloth,* 412 U.S. at 247, 93 S.Ct. at 2058. There is no reason to believe, under circumstances such as are present here, that the defendant's responses to the officers' questions was presumptively coerced. Therefore, there is no reason to reject the traditional test for determining the voluntariness of the defendant's response. Here, the record before us clearly establishes the defendant's consent for the officers' search was voluntary.

¶ 12 The original question posed to this Court from Judge Holmes focused on whether the conduct of the Kansas officers was legal as they were acting outside of their jurisdiction. The issue of the exercise of a police officer's authority outside his/her jurisdiction has usually been addressed by the courts in the context of the officer's authority to affect an arrest. *See Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *U.S. v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *See also U.S. v. Green,* 178 F.3d 1099 (10th Cir.1999); *Staller v. State,* 1996 OK CR 48, 932 P.2d 1136; *State v. Stuart,* 1993 OK CR 29, 855 P.2d 1070; *Phipps v. State,* 1992 OK CR 32, 841 P.2d 591; *Graham v. State,* 1977 OK CR 1, 560 P.2d 200.

¶ 13 However, that is not the issue in the present case, as the arrest was made by the local Bartlesville Police, not the Kansas officers. For that reason, *Phipps* is inapplica-

ble.[1]

¶ 14 Here, the Kansas officers were conducting an investigation into stolen motorcycles and motors. As such, their questioning of the defendant was investigatory and not accusatory. In *Escobedo v. Illinois,* 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977 (1964), the United States Supreme Court said:

> ... Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' ... by gathering information from witnesses and by other 'proper investigative efforts.' ... We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer.

378 U.S. at 492, 84 S.Ct. at 1766 (internal citations omitted). *See also Spano v. New York,* 360 U.S. 315, 327, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).

¶ 15 While the Kansas officers were admittedly acting outside their jurisdiction by interviewing the defendant in Bartlesville, Oklahoma, there is no legal prohibition to their questioning of the defendant in a consensual encounter.

¶ 16 In our previous state cases, this Court has held that officers acting outside their jurisdiction act as private citizens. *See also Horn v. City of Seat Pleasant, Md.,* 57 F.Supp.2d 219, 225 (D.Md.1999) ("an officer acting beyond his jurisdiction loses his cloak of authority.") Here, the Kansas officers clearly informed the defendant they had no authority over him. Viewing the officers' actions as those of private citizens, they are perfectly legal. There is nothing illegal about private citizens asking each other questions and asking to look around their place of business. This Court's Order states that a private citizen would not ask another citizen to sign a written consent form with a police division name on it. That is probably true, but the written consent form does not raise this situation to the accusatory level where constitutional safeguards kick in. The written consent form, just like the *Miranda* warning, is a "red herring" in this case which appear to have been given by the officers only out of an abundance of caution. However, neither the consent form nor the *Miranda* warning contributes to a coercive atmosphere where the defendant was forced to sign the consent to search. As discussed above, the consent to search was given voluntarily.

¶ 17 Accordingly, the encounter between the Kansas officers and the defendant was consensual, and the defendant's consent to search voluntarily given. Therefore, there has not been a Fourth Amendment violation and the evidence seized in the search is admissible at trial. *See U.S. v. Green,* 178 F.3d 1099, 1105 (10th Cir.1999).

¶ 18 Based upon this analysis, I believe the descriptive term "acting as a private citizen" has been overused, and to a degree misused when analyzing the role of law enforcement in our mobile society. Its use has been unknowingly wrongly extended merely because Oklahoma has a statute relating to "arrests" by private citizens. Now is the time to recognize the distinct difference between the investigation stage and the prosecution stage in the criminal process. Every day of the week law enforcement personnel are moving across jurisdictional lines of demarcation following leads on evidence. That is the nature of crime. Criminals do not stay in clearly marked city, county, or state boundaries. Investigating officers should be able to follow where the evidence leads. The

---

1. Further, this case is more consistent and a natural extension of our decision in *Staller*. In *Staller*, officers arranged for a confidential informant to contact suspected drug dealers to schedule some "buy/walk" drug sales. The confidential informant contacted the appellant and agreed to buy illegal drugs from him. 932 P.2d at 1139. This type of active participation in the arranging of a controlled drug buy is different from the investigative actions of the Kansas officers in the present case. In the present case, the crime had already been committed by the time the Kansas officers arrived in Bartlesville. In *Staller*, the crime had yet to be committed when the officers acted out of their jurisdiction. However, we find that sequence of events did not deprive the officers of the ability to obtain information and make observations that led to probable cause necessary for an arrest warrant. *Id.* at 1140.

issue is then one of due process. Did the officer follow the rules? Did he or she inform the defendant and obtain a valid, knowing, voluntary consent, or go to local law enforcement and obtain a valid search warrant? The officers in the present case did everything right. The defendant's due process rights were protected. Local authorities were informed and utilized at the appropriate time. There is no legal basis for excluding the evidence in this case.

¶ 19 I am authorized to state Judge LILE joins in this analysis and vote.