2017 OK CR 3

**The STATE of Oklahoma, Appellant,**

v.

**Ginna Lee KEEFE, Appellee.**

**Case Number: S–2015–961**

Court of Criminal Appeals of Oklahoma.

Decided: 01/31/2017

APPEARANCES AT HEARING, KEVIN KELLER, ASSISTANT DISTRICT ATTORNEY, 500 S. DENVER AVE., STE. 900, TULSA, OK 74103, ATTORNEY FOR STATE

ROB V. HENSON, HENSON LAW FIRM, PLLC, 406 S. BOULDER, TULSA, OK 74103, ATTORNEY FOR DEFENDANT

APPEARANCES ON APPEAL, KEVIN KELLER, ASSISTANT DISTRICT ATTORNEY, 500 S. DENVER AVE., STE. 900, TULSA, OK 74103, ATTORNEY FOR APPELLANT

ROB V. HENSON, HENSON LAW FIRM, PLLC, 406 S. BOULDER, TULSA, OK 74103, ATTORNEY FOR APPELLEE

## OPINION

HUDSON, JUDGE:

¶1 Appellant, the State of Oklahoma, charged Appellee Ginna Lee Keefe in Tulsa County District Court, Case No. CM–2015–1332, with Driving Under the Influence of Drugs (Count 1), in violation of 47 O.S.Supp.

2013, 11–902(A)(3); and Unsafe Lane Use (Count 2) in violation of 47 O.S.2011, 11–309. On September 22, 2015, Appellee filed a *Motion to Suppress and Dismiss* challenging the legality of the initial traffic stop and detention. A hearing on Appellee's motion was held on October 21 and 22, 2015. The Honorable Bill Hiddle, Special Judge, sustained Appellee's motion and suppressed all evidence resulting from the traffic stop. Appellant, the State of Oklahoma, now appeals, raising the following issues:

I. THE TRIAL COURT ERRED IN DETERMINING THE OFFICER DID NOT ACT AS A PRIVATE CITIZEN AND ACTED UNDER THE COLOR OF LAW OUTSIDE HIS JURISDICTION; and

II. IF THE OFFICER WAS NOT ACTING AS A PRIVATE CITIZEN, HE WAS ACTING UNDER THE COMMUNITY CARETAKER EXCEPTION.

¶ 2 We exercise jurisdiction pursuant to 22 O.S.2011, § 1053(5). After thorough consideration of the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we **REVERSE** the district court's order for reasons discussed below.

## BACKGROUND

¶ 3 The State presented one witness, Officer Ryan Rogers of the Tulsa Police Department, at the hearing on Appellee's motion to suppress. Officer Rogers testified he was driving home at approximately 10:25 p.m. on February 22, 2015, having just completed his shift when he encountered Appellee. He was traveling east in his patrol car on Highway 51, also known as the Broken Arrow Expressway. While near 12900 East Highway 51, Officer Rogers observed a white truck driven by Appellee speed past him weaving in and out of the lanes. Although Appellee committed two traffic violations as she sped by—speeding and failure to maintain lane— Officer Rogers did not initiate a stop at this time as he was off duty and Appellee had not exhibited "patterns of driving that would be dangerous to anybody else besides the speeding." However, as Officer Rogers and

Appellee sped towards the boundary between Tulsa and Broken Arrow,[1] Officer Rogers— concerned for the safety of the driver and other drivers on the road—decided to radio and alert the Broken Arrow Police Department (BAPD) regarding the situation so they could "conduct an investigation." Officer Rogers explained, "I was just going to follow her until BAPD got with me."

¶ 4 At one point while Officer Rogers was following Appellee, he observed Appellee veer left across several lanes and nearly strike the concrete barrier separating the east and west bound traffic lanes. It is unclear from the record, however, whether this event occurred in Tulsa or Broken Arrow. In any event, shortly after entering Broken Arrow, Appellee crossed numerous lanes, almost going off the road in order to take the 145th Street exit. At this time, Officer Rogers decided Appellee's driving behavior had become too dangerous and he activated his lights and siren to effect a stop. Officer Rogers stated, "I effected the stop when [she] became a danger to herself and the people around her." Officer Rogers further testified that due to Appellee's dangerous driving behavior, he could no longer wait for BAPD to intervene. After the stop, Officer Rogers made contact with Appellee and waited for BAPD officers to arrive. Officer Chad Burden with the BAPD arrived soon thereafter.

¶ 5 The remaining events forming the basis for Appellee's misdemeanor arrest can be gleaned from Officer Burden's probable cause and blood test affidavits. When Officer Burden arrived on the scene, Appellee was sitting in the driver's seat of the vehicle with the keys in the ignition. He did not smell the odor of alcohol, but observed Appellee was lethargic, had slurred speech, red bloodshot eyes, and a sleepy appearance. Appellee was asked to step out of her vehicle and submit to standardized field sobriety tests, which she failed. Officer Burden arrested Appellee for suspicion of driving under the influence of drugs and transported her to the Hillcrest South hospital for a consensual blood test. According to the Blood Test Affidavit, Appellee admitted taking Xanax.

---

1. The boundary line between the two cities is at 13300 East Highway 51.

¶ 6 Following Officer Rogers' testimony, Judge Hiddle sought clarification of seemingly conflicting case law involving officers outside their jurisdiction acting as private citizens as well as acting under the color of law. Two of the primary cases being *State v. Kieffer–Roden*, 2009 OK CR 18, 208 P.3d 471, and *Phipps v. State*, 1992 OK CR 32, 841 P.2d 591. Given that immediate action became necessary in Judge Hiddle's view to neutralize what had escalated into an extremely dangerous situation in this case, he expressed great concern regarding the applicability of established case law prohibiting an officer that is acting as a private citizen from utilizing the "tools" he or she has available to effectuate a stop. Judge Hiddle at one point even stated, "Somebody needs to take this to the Court of Criminal Appeals." He further commented in frustration, "[W]hat is [Officer Rogers] required to do? Go on home and let a drunk driver kill innocent children, or use every means at his disposal to stop the drunk driver?" Despite this frustration, Judge Hiddle ultimately granted Appellee's motion to suppress by finding Officer Rogers (1) acted outside his jurisdiction; and (2) proceeded as a private citizen, who improperly acted under the color of law when he utilized his lights and sirens to stop Appellee.

## DISCUSSION

¶ 7 This Court reviews the district court's decision granting Appellee's motion to suppress for an abuse of discretion. *State v. Nelson*, 2015 OK CR 10, ¶ 11, 356 P.3d 1113, 1117. An abuse of discretion is defined as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented." *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170 (quoting *Stouffer v. State*, 2006 OK CR 46, ¶ 60, 147 P.3d 245, 263). When reviewing a trial court's ruling, we defer to the trial court's findings of fact unless they are clearly erroneous, and review the trial court's legal conclusions *de novo*. *Nelson*, 2015 OK CR 10, ¶ 11, 356 P.3d at 1117; *State v. Alba*, 2015 OK CR 2, ¶ 4, 341 P.3d 91, 92.

¶ 8 The State's two propositions of error are intertwined and are thus addressed concurrently. The State asserts the trial court erroneously granted Appellee's motion to suppress and argues: (1) Officer Rogers was acting as a private citizen; and (2) if not, his actions were appropriate pursuant to the Community Caretaker Exception. While we find the trial court abused its discretion when it found the stop illegal, we take a different approach than proposed by the State in reaching this determination.

¶ 9 As a general rule, a police officer's authority cannot extend beyond his or her jurisdiction. *United States v. Sawyer*, 2004 OK CR 22, ¶ 11, 92 P.3d 707, 709. Exceptions to this rule include: (1) hot pursuit; (2) when one municipality has requested the assistance of another municipality's officers; and (3) service of an arrest warrant. *Id.*; *Staller v. State*, 1996 OK CR 48, ¶ 10, 932 P.2d 1136, 1139; *Graham v. State*, 1977 OK CR 1, ¶ 14, 560 P.2d 200, 203. "Otherwise, once outside the city limits of the municipality by which they are employed, the officer acts as a private citizen with no greater authority than that of a private citizen." *Sawyer*, 2004 OK CR 22, ¶ 11, 92 P.3d at 709. Based upon the limited evidence presented here, Officer Rogers was clearly not acting pursuant to any of these three exceptions. While Officer Rogers was following Appellee, his decision to stop her was not formed until he was outside his jurisdiction. While within his jurisdiction, Officer Rogers had not witnessed Appellee commit any major infractions that in his view would be dangerous to others. Thus, Officer Rogers cannot be found to have been in hot pursuit. *See Molan v. State*, 1980 OK CR 55, ¶ 3, 614 P.2d 79, 80 ("[T]he idea of fresh pursuit requires that an officer begin the chase in his or her own jurisdiction and continue it until the person is caught."). Additionally, Officer Rogers was not attempting to serve a warrant, nor was any evidence presented indicating the Broken Arrow Police Department requested Officer Rogers' assistance.

¶ 10 However, based on the circumstances of this case Officer Rogers' actions were justified by 22 O.S.2011, § 202—arrest by private person—as determined in *State v. Kieffer–Roden*, 2009 OK CR 18, 208 P.3d 471.

Pursuant to § 202,[2] a law enforcement officer acting outside of his or her jurisdiction is a private citizen, and as such, may make a citizen's arrest *See also Kieffer–Roden*, 2009 OK CR 18, ¶ 6, 208 P.3d at 472; *Nickell v. State*, 1987 Ok CR 260, ¶ 8, 746 P.2d 1155, 1157–58. Similar to the facts here, the arresting officer in *Kieffer–Roden*, a commissioned police officer of the Citizen Potawatomi Nation, conducted the arrest outside his tribal jurisdiction under the mistaken belief that he was also a validly commissioned Deputy Sheriff of Pottawatomie County. *Id.*, 2009 OK CR 18, ¶¶ 2–3, 10, 208 P.3d at 472–73. The officer testified he observed signs the defendant was driving while intoxicated as she left the Fire Lake convenience store located on tribal land. *Id.*, 2009 OK CR 18, ¶ 1, 10, 208 P.3d at 471, 473. The officer followed the defendant and effectuated the stop outside tribal land after observing her commit additional driving infractions. *Id.* The defendant was subsequently charged with Aggravated DUI and moved to suppress the evidence on various grounds—one of which challenged the validity of the deputy's commission. The District Court granted the motion, suppressing all of the resulting evidence of intoxication. On appeal, this Court reversed concluding the tribal officer was properly acting as a private citizen under the authority of section 202 of Title 22. *Id.*, 2009 OK CR 18, ¶ 12, 208 P.3d at 474.

¶ 11 Despite recognition of this Court's decision in *Kieffer–Roden*, confusion arose when Judge Hiddle attempted to reconcile *Kieffer–Roden* with established case law providing that an officer acting outside of their jurisdiction, having no greater authority than a private citizen, may *not* act under "color of law". *See Phipps*, 1992 OK CR 32, ¶ 9, 841 P.2d at 593; *see also Staller*, 1996 OK CR 48, ¶ 10 n. 6, 932 P.2d at 1139 n. 6. Based on this line of cases, Officer Rogers' use of his lights and sirens to effectuate the stop became a point of contention in this case. Struggling to reconcile these seemingly conflicting cases,

Judge Hiddle ultimately determined that Rogers was not acting within his capacity as a private citizen when he stopped Appellee. The legal confusion that resulted in this case is understandable. This Court's jurisprudence with regard to officers acting outside their jurisdiction is by necessity factually driven. Thus, the critical nuances of each case vary, and given these factual subtleties, reconciling seemingly conflicting cases may prove difficult at times. The present case clearly exposes the need for further clarification with regard to our decision in *Kieffer–Roden*; thus, we take this opportunity to further expand on our decision and its application to the present case.

¶ 12 The Court in *Kieffer–Roden* did not directly address the manner in which the officer executed the traffic stop. However, it is implicit in the facts of the case that the officer was acting under the color of law when he conducted the stop. For public safety reasons, such action was necessary to swiftly effectuate the stop and protect both the Appellee and other drivers on the roadway. *Cf. Underwood v. State*, 2011 OK CR 12, ¶ 23, 252 P.3d 221, 236 ("the imminent need to save human life—should forgive, or at least delay, strict compliance with *Miranda*"); *Coffey v. State*, 2004 OK CR 30, ¶ 6, 99 P.3d 249, 252 ("[A] warrantless entry may be justified by the immediate need to protect or preserve life or avoid serious injury."); *Williams v. State*, 1962 OK CR 80, ¶ 20, 373 P.2d 91, 95–96 (police officer acting outside his jurisdiction had a duty to stop and arrest a suspected drunk driver).

¶ 13 The Court in *Kieffer–Roden* thus effectively recognized a public safety exception to the general rule that an officer acting outside of his or her jurisdiction as a private citizen may not act under color of law. *Cf. Graham*, 1977 OK CR 1, ¶ 14, 560 P.2d at 203 (examples of exceptions to the general rule that a police officer's authority does not extend beyond his jurisdiction are merely

---

**2.** Title 22 O.S.2011, § 202 provides that a private person may arrest another:
1. For a public offense committed or attempted in his presence.
2. When the person arrested has committed a felony although not in his presence.

3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

"illustrations of exceptions" and do not limit police officers in operating outside their jurisdiction "where otherwise authorized by statute or decisions of this Court or Federal Courts which create other exceptions.").[3] When determining whether this narrow exception applies in cases such as this one, we now establish the following four factors to be considered: (1) the urgency of the situation in that no other course of action promises the relief needed; (2) the need to protect the safety of the public, the suspect or the officer from immediate danger; (3) the primary motivation of the officer involved is to protect the safety of the public, suspect or the officer from immediate danger; and (4) whether the officer's use of the "color of law" was minimal and limited to the means necessary to secure the welfare of himself or others. *See Underwood*, 2011 OK CR 12, ¶ 24, 252 P.3d at 236 (officer's general query was "aimed at saving the girl's life—not calculated to build a case against Appellant"); *Jackson v. State*, 2006 OK CR 45, ¶¶ 21–22, 146 P.3d 1149, 1158–59 (police limited their questions to the location of the child with the primary purpose of the questions being to rescue the child, not to investigate a crime); *Coffey*, 2004 OK CR 30, ¶¶ 5–7, 99 P.3d at 251–52 (officers had reasonable grounds to believe there was an immediate need to protect others and entry into the house was brief to secure the safety of potential occupants).

¶ 14 The facts here clearly fit within the public safety exception as established herein. As Judge Hiddle determined, Appellee's "gross recklessness" created an urgent situation endangering the safety of Appellee and other citizens on the roadway at that time. Officer Rogers acted under a reasonable belief that he could no longer wait for a Broken Arrow police officer to arrive and intervene. Thus, Officer Rogers' primary purpose and motivation for effecting the stop with the aid of his lights and sirens was to secure the safety of Appellee and others. No other course of action assured his ability to swiftly stop Appellee and neutralize the situation. Once Appellee was stopped, Officer Rogers' actions comported with 22 O.S.2011, § 205, which provides "[a] private person who has arrested another for the commission of a

public offense, must, without unnecessary delay, take him before a magistrate or deliver him to a peace officer." Having already previously alerted the Broken Arrow Police Department, Officer Rogers simply detained Appellee and awaited the arrival of local law enforcement so that they could take the matter over and conduct an investigation.

■■■■ ¶ 15 As a final note, justice is not served by the application of the exclusionary rule under the circumstances of this case. "[T]he 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" *State v. Sittingdown*, 2010 OK CR 22, ¶ 18, 240 P.3d 714, 718 (quoting *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 1165–66, 94 L.Ed.2d 364 (1987)). Assuming arguendo that the evidence obtained here was the product of an illegal search, the evidence was not "come at by exploitation of that illegality[, but rather] by means sufficiently distinguishable to be purged of the primary taint." *Baxter v. State*, 2010 OK CR 20, ¶ 9, 238 P.3d 934, 937 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)). Officer Rogers' motivation for stopping Appellee in the manner in which he did was to remove her from the roadway and prevent a grave accident. Having just completed his shift, Officer Rogers simply wanted to go home that night. His intent was never to arrest Appellee and gather evidence against her. Once Appellee was stopped, Officer Rogers detained her and awaited the arrival of local police. Moreover, his prior dispatch communications with the Broken Arrow Police Department assured their intervention. Officer Rogers intended to follow Appellee until such intervention occurred. Therefore, discovery of the suppressed evidence by lawful means was inevitable. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

¶ 16 Based on the foregoing, we find the trial court abused its discretion when it granted Appellee's motion to suppress. The State's appeal thus has merit and we grant relief.

---

3. If the public safety exception may be used to excuse a constitutional violation, it stands to reason it may be similarly used to excuse a statutory violation of those same interests.

## DECISION

¶ 17 The October 22, 2015 ruling of the trial court sustaining Appellee's motion to suppress the evidence in this case is **RE-VERSED** and this case is **REMANDED** to the trial court for further proceedings not inconsistent with this opinion.

LUMPKIN, P.J.: CONCUR

LEWIS, V.P.J.: CONCURRING IN RESULTS

SMITH, J.: CONCUR

JOHNSON, J.: CONCUR

LEWIS, V.P.J.: CONCURRING IN RESULTS:

¶ 1 While the majority reaches the correct result, the rationale limits the Court's holding in *State v. Kieffer–Roden*, 2009 OK CR 18, 208 P.3d 471; therefore, I concur in results only. In the present case, the trial court simply failed to follow the precedential nature of *Kieffer–Roden*, thus the trial court abused its discretion.

¶ 2 A police officer acting outside his jurisdiction may make an arrest for a public offense committed in the presence of the officer just as a private citizen authorized by 22 O.S.2011, § 202. *Kieffer–Roden*, 2009 OK CR 18, ¶ 10, 208 P.3d at 473; *Nickell v. State*, 1987 OK CR 260, ¶ 8, 746 P.2d 1155, 1157; *Williams v. State*, 1962 OK CR 80, ¶ 20, 373 P.2d 91, 95–96; *Moran v. State*, 1951 OK CR 150, 95 Okla.Crim. 6, 237 P.2d 920, 922.

¶ 3 Pursuant to § 202, a private citizen may arrest another "for a public offense committed or attempted in his presence." A public offense is any act forbidden by law and punishable under law. 21 O.S.2011, § 3. Without doubt, a citizen is only limited to the use of force which is reasonable and necessary to effect the arrest. It is absurd that a police officer would have less authority to make a citizen's arrest when the officer happens to be wearing the uniform of his profession and/or driving an official vehicle while outside the jurisdiction of his commission. This fact is even more absurd in this day and age when an officer may live outside the city limits or county boundaries where the officer is employed.

¶ 4 The *Kieffer–Roden* opinion does not contradict those cases involving officers conducting seizures and searches outside their jurisdiction where the rules of arrests by citizens are not invoked. *See United States v. Sawyer*, 2004 OK CR 22, 92 P.3d 707 (unauthorized request for consent to search); *Phipps v. State*, 1992 OK CR 32, ¶ 9, 841 P.2d 591, 593 (officer only suspicioned that a drug transaction had occurred before acting under color of law and receiving consent to search); *Staller v. State*, 1996 OK CR 48, ¶¶ 10–11, 932 P.2d 1136, 1139 (officer acting as a private citizen was unauthorized to buy drugs). This Court's cases only limit the officer's authority to act as a private citizen; the cases do not reduce the authority below that of a citizen. The increased power that a uniform and/or police vehicle brings to bear, so that an arrested person complies with the "citizen's arrest," does not invalidate that arrest. Further, as this Court has previously held, the officer, acting a citizen, must comply with the same rules as a non-officer citizen in making an arrest.

¶ 5 In addition to my disagreement to the treatment of *Kieffer–Roden*, I also disagree with the use of clear *dicta* in the analysis of the exclusionary rule and the rule of inevitable discovery, neither of which is necessary to the holding of the opinion.